MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v.
W. T. WILLIAMS.

Decided December 17, 1910.

**1.—Character—General Reputation—Admission of Evidence.**

Testimony to sustain the good character of a witness for truth and veracity is not admissible unless an attempt has been made by the opposite side to im-

peach such character; and the mere contradiction of the witness by other witnesses testifying differently, is not such an attack as would authorize the introduction of testimony sustaining the general character of the first witness. Rule applied.

**2.—Same—Improper Evidence—Objection—Conflicting Evidence—Practice.**

In a damage suit, counsel for plaintiff asked a witness if he knew the general reputation of the plaintiff, who had testified in the case, for truth and veracity in that community; to which question counsel for defendant made an objection which the court overruled; the witness then, without answering yes or no, stated in substance that her reputation was good; defendant took a bill of exception to the ruling of the court in permitting the question, which the court qualified by stating that when the question was objected to, it was abandoned and never answered, and that the answer of the witness was a voluntary statement not responsive to the question, and defendant made no motion to strike it out. Held, the qualification of the bill was not warranted by the facts; there was in fact no abandonment of the question nor of the objection thereto, and a motion to strike out would have been useless, and the objection to the testimony being good, and the testimony in the case being sharply conflicting, the action of the court was reversible error.

**3.—Sickness—Cause—Hearsay Testimony.**

The testimony of a witness as to what she learned from other members of the family was the cause of a fainting spell suffered by a plaintiff in a damage suit, would be hearsay.

**4.—Hypothetical Question.**

Hypothetical questions should be based on facts proved; otherwise they should not be allowed.

**5.—Evidence—Rebutting Testimony.**

A doctor testified that the wife was present at the time her husband made certain statements to him concerning her health; the husband having died, it was competent for the wife to testify that her husband did not make said statements. Such testimony was not hearsay.

**6.—Carriers of Passengers—Failure to Warm Waiting Room—Negligence —Question of Fact.**

In suit for damages for injury to health alleged to have been caused by the failure of a railroad company to properly warm its passenger waiting room at a station in April, and the testimony raising the issue whether or not the temperature of the weather was such as to make it a duty to have a fire, it was error for the court in its charge to assume that the failure to heat the room was negligence.

Appeal from the District Court of Hunt County. Tried below before Hon. R. L. Porter.

*Coke, Miller & Coke* and *Templeton, Craddock, Crosby & Dinsmore,* for appellants.—The court erred in admitting in evidence the testimony of the witness J. Y. Carr as to the general reputation of the plaintiff for truth and veracity in the community in which she lived in Rockwall County. Texas & P. Ry. Co. v. Raney, 86 Texas, 364; McMichael v. Truehart, 48 Texas, 216; Wiseman v. Baylor, 69 Texas, 67; Atchison, T. & S. F. Ry. Co. v. Van Belle, 64 S. W., 399. The agreed statement of facts not only fails to support the statements subjoined to the bills

as an explanation by the court, but contradicts the said statements contained in said explanations; wherefore the facts stated in the explanations will be disregarded and the statement of facts will control. McMichael v. Truehart, 48 Texas, 216; Wiseman v. Baylor, 69 Texas, 67; Ramsey v. Hurley, 72 Texas, 200; Scott v. Childers, 60 S. W., 776. The charge is upon the weight of the evidence in so far as it instructs the jury that the defendant failed to keep its depot warmed for an hour before the arrival of the train on the morning of April 17, 1908, and was liable to the plaintiff for any injuries sustained, because there was evidence tending to show that the condition of the weather and of the temperature was such that there was no necessity for fire in the depot; and, even if the statute quoted in the charge had application to the case, it can not and does not mean that if the depot was reasonably warm and comfortable because of the general temperature, nevertheless, it was the duty of the defendant to have the depot warmed or further warmed by artificial means; and because it assumes the defendant was negligent in not having the depot artificially heated, it being a question of fact under the evidence whether the defendant was negligent or not with respect to the condition of the waiting room or depot. International & G. N. Ry. v. Doolan, 120 S. W., 1121; Texas Midland Railroad v. Griggs, 106 S. W., 411; Gulf, C. & S. F. Ry. v. Turner, 93 S. W., 195.

*Evans & Carpenter,* for appellee.—The plaintiff, Mrs. Williams, having pleaded and testified that her condition or injury was caused by the exposure in the defendant's depot on the morning of April 17, 1908, and where the defendant pleaded that Mrs. Williams did not receive any injuries in consequence of any exposure in its depot, but that her condition existed anterior to the time of the exposure and arose from causes other than the exposure, and when this allegation by the appellant was followed up by offering the testimony of several witnesses to show that Mrs. Williams had made statements contradictory to those made by her upon the witness stand, and where other evidence was offered to show that the allegations in defendant's answer were true, this was tantamount to charging both by pleadings and proof that Mrs. Williams was attempting to recover for injuries which she knew were not the result of the exposure and for which she knew the defendant was not liable, and was in effect a charge that Mrs. Williams was voluntarily attempting to mulct the defendant in damages which it should not pay, and was in effect an attack upon her credibility as a witness, and an impeachment of her character for truth and veracity, and she had the right to strengthen her testimony to the effect that she was injured on account of the exposure, as she claimed to be, by proof of her general reputation for truth and veracity. Houston Electric Co. v. Faroux, 125 S. W., 922; Texas & P. Ry. Co. v. Raney, 86 Texas, 363; Texas C. & N. W. Ry. v. Weideman, 62 S. W., 810; Loomis v. Stuart, 24 S. W., 1078; Phillips v. State, 19 Texas Civ. App., 164; Fire Assn. v. Jones, 40 S. W., 44; Fox v. Robbins, 70 S. W., 597; Sheppard v. Love, 71 S. W., 68; Contreras v. Traction Co., 83 S. W., 870; Missouri,

K. & T. Ry. v. Dumus, 93 S. W., 493; Missouri, K. & T. Ry. Co. of Texas v. Adams, 42 Texas Civ. App., 274.

RAINEY, Chief Justice.—W. T. Williams brought this suit against the Missouri, Kansas & Texas Railway Company of Texas to recover damages for injuries alleged to have been sustained by his wife, which resulted from exposure to cold in the company's passenger station at Brashear, Hopkins County, to which station she had gone in the early morning to take passage to Greenville on appellant's train. After suit, W. T. Williams died, and the wife, Alice Williams, made herself a party and prosecuted the suit.

The petition alleged, in substance, that on April 15, 1908, Williams and wife purchased from appellant's agent at Greenville, two round-trip tickets to Brashear; that Brashear was a flag station at night; that said agent at Greenville informed them that the agent at Brashear would flag the early morning train in order to permit them to take passage thereon upon their return to Greenville; that Williams and wife went to the waiting room of appellant about 3:30 on the morning of April 17, 1908; that it was cold and damp; that the agent at Brashear failed and refused to heat or warm the waiting room, and failed and refused to flag the train; that they were compelled to wait and remain in said waiting room where it was cold and damp about one hour before the train reached said station, and afterwards were compelled to leave the said station and go to a neighboring house for the remainder of the night; that the exposure of Mrs. Williams caused her to contract cold and grippe, which afterwards resulted in rheumatism, nervous prostration, general weakness and breakdown of her health which has become permanent; that Mrs. Williams has continuously since suffered physically and mentally and been disabled from physical labor.

Appellant answered by general denial, and specially that Brashear was for all night trains a flag station only and defendant did not keep a servant or agent there at night, and persons desiring to take night trains flagged the trains themselves, which was known to W. T. Williams at the time he went to the station; that if any one was at said station representing himself as acting for appellant it was a fraud as he had no authority to act for appellant; that if Mrs. Williams was suffering from any disease or ailment it was from disease that existed prior to the alleged injury; that plaintiffs contributed to the injury in that they did not take the necessary precaution for Mrs. Williams' protection; that if Mrs. Williams was suffering from disease or ailment it was the consequence of infirmities and disease natural to women of her age.

A trial resulted in a judgment in favor of appellee for $3500, and the railway company appeals.

The first assignment of error is: "The court erred in admitting in evidence the testimony of the witness J. Y. Carr as to the general reputation of the plaintiff for truth and veracity in the community in which she lived in Rockwall County, as set forth in defendant's bill of exceptions No. 2.

The bills of exceptions is: "Be it remembered that upon the trial of the above entitled and numbered cause the defendant's witness, J. Y. Carr, being upon the witness stand and having testified on direct examination, was, upon cross-examination by plaintiff's counsel, asked the following question: 'I will ask you to state if you know Mrs. Williams', plaintiff's, general reputation for truth and veracity in that community?' To which question defendant's counsel objected because immaterial and irrelevant, there having been no attack on her general reputation for truth and veracity and her general reputation not having been put in issue by any evidence in this cause. Which objection was by the court overruled, and the witness was permitted to answer, which he did, as follows: 'Certainly she was a nice, good woman, a good citizen as far as the woman was concerned in our community, a splendid family of people as far as I know.' To all of which action and ruling of the court the defendant's counsel then and there in open court excepted, and now here tenders this its bill of exception and asks that the same be signed, approved and filed as a part of the record in this cause." "This bill is approved with this explanation: When the question was objected to, it was abandoned and was never answered. The witness made a voluntary statement as set forth in the bill, but it was not responsive to the question and no motion was made to strike it out; besides, at the time this witness testified, there had been an attack made on the truth and veracity of Mrs. Williams."

Testimony offered to sustain the good character of a witness for truth and veracity is not admissible unless an attempt has been made by the opposite side to impeach such character. Every witness is presumed to be truthful until the contrary is shown, and the contradiction of a witness by other witnesses testifying differently is not such an attack upon the character for truth and veracity as authorizes the introduction of testimony sustaining the general character for truth and veracity. Texas & Pac. Ry. Co. v. Raney, 86 Texas, 363.

The explanation appended to the bill of exceptions by the trial judge, we think, is not supported by the record. There was testimony by witnesses contradicting the testimony of Mrs. Williams in some particulars, but, as we understand it, there was no attack upon her general character for truth and veracity.

We do not think it ought to be considered that the question was abandoned and never answered, and that the witness' statement was not responsive to the question. The rule for examining witnesses on this matter is to first ask, do you know the general reputation of ———— in the community in which she lives for truth and veracity? The answer should be either yes or no. If the answer is yes, then the answer to the second question, is that reputation good or bad? should be either, good or bad. But, as is frequently the case, the witness here answered both questions by replying, "Certainly, she was a nice, good woman, a good citizen as far as the woman was concerned in our community, a splendid family of people, as far as I know." This answer was all that counsel for plaintiff could have desired for the purpose of

sustaining the credibility of his witness, and there was no reason for him to further press the matter, the court, over defendant's objection, having ruled the question was proper to be answered. The court having so ruled, we do not think defendant's counsel was called upon to move to strike out said testimony. If the question was proper, as held by the court, it would have been a useless proceeding, as the answer, if made in proper form, would doubtless have been in substance the same. The issue as to whether or not plaintiff was suffering from disease existing prior to that claimed to be caused by the acts of the defendant, was sharply drawn. The testimony being contradictory, we can not say this evidence was harmless.

Appellant's second assignment is: "The court erred in admitting in evidence over the objections of the defendant the testimony of Miss Grace Williams with reference to a fainting spell suffered by the plaintiff in Rockwall County, and to the effect that she learned the cause of the fainting spell was that the doctor gave her too much medicine, as set forth in the defendant's bill of exceptions No. 3."

The witness was asked: "Did you know or learn at that time what caused the fainting spell?" To which she answered, "Yes, sir; the doctor gave her too much of the medicine. I forget the name (of the medicine) that caused her to faint. I learned it was some medicine she took that caused it." The objection was made to the question that it was hearsay, that it called for self-serving declarations, and for the opinion and conclusion of the witness. These objections were overruled and the witness permitted to testify. We think it clear that the question called for what the witness had learned as well as what she knew, and her testimony clearly shows that she was stating what she learned was the cause of her mother's fainting spell. She testified on cross-examination: "It was my understanding the doctor gave her too much medicine which caused the fainting spell. That was the first time the doctor had ever been to see my mother. The doctor had been there the day she fainted, she fainted after he had been there. They sent back after the doctor after she fainted, as well as I remember. I did not see the doctor either time he came. I was not at home. I do not remember how long she stayed in bed from that spell, do not remember what kind of medicine she took, or whether she had been taking medicine before the doctor came. I do not know how I learned she had taken the medicine and that he had given her too much; I suppose from some of the family." This evidence was clearly subject to the objection that it was hearsay, and should not have been admitted. The issue as to whether or not appellee was suffering from disease before the alleged acts of the appellant that caused her suffering, was sharply contested, which renders the testimony more objectionable and we can not tell what effect it had on the jury.

We overrule the third assignment of error. The hypothetical question objected to substantially embodied all the necessary facts to which it related. It called for an opinion as to the effect exposure to cold would

produce under the circumstances and one that medical science and skill ought to be familiar with.

The fourth assignment is: "The court erred in admitting in evidence the testimony of the plaintiff's witness, Dr. J. A. Smith, over the objections of the defendant, in answer to the following question: 'Assume, doctor, what I state now to be the facts, and I will put it in a hypothetical form: Suppose you are called to see a patient and you make the examination, several examinations as you made of this woman and ascertain her condition, you ascertained of her; now, suppose that you learn that prior to that time, previous to the first examination you made of her, you find that she is in reasonably good health, able to do her work, working in the field and in the house, fifty years of age, having passed the change of life seventeen or eighteen years before; say that she is subjected to an exposure in a cold, wet, damp depot where her feet and body became very cold and chilled, and she began to shake and her teeth to chatter, and she gets very cold, and she contracts a bad cold and la grippe with which she continues to suffer until you find and make this examination, would or not in your judgment the exposure to the cold cause the condition you find?' to which question said witness answered: 'I would attribute it to the exposure,' because (1) the question called for the opinion and conclusion of the witness; (2) it sought an opinion of the witness on facts not made by the record; (3) the question did not include all the facts in the case as given in evidence; (4) the question was leading, as set forth in the defendant's bill of exceptions No. 10."

Appellant submits under this assignment the proposition that, the expert ought not to be permitted, over objection, to answer a hypothetical question which contains a statement of a fact or facts not proved. The question assumes that the depot room was wet. The evidence does not show that the depot was wet, and therefore the question was error. Hypothetical questions must be based on facts proved, and when such facts are not stated, the answers to such question is merely speculative and not pertinent to the investigation. Hicks v. Galveston, H. & S. A. Ry. Co., 71 S. W., 322.

These remarks apply to the fifth assignment of error and it is sustained.

The sixth assignment of error is: "The court erred in admitting in evidence over the objection of the defendant the testimony of the witness Dr. J. A. Smith to the effect that if a person is not too severely chilled and comes in to a warm fire and warms up, there would be no bad results, because the question eliciting said testimony calls for an opinion and conclusion of the witness upon a hypothetical case not made by the record, and calls for the opinion of the witness upon the facts of the case, and was argumentative, as set forth in the defendant's bill of exceptions No. 5." There were no facts proven upon which to base this question, and for that reason the objection should have been sustained.

The seventh, eighth and ninth assignments relate to the same subject

matter and are submitted together. The seventh, which covers the substance of all of them, is as follows: "The court erred in admitting in evidence, over the objection of the defendant, the plaintiff's testimony to the effect that her husband did not state to Dr. Welch at any time that she, the plaintiff, had been troubled with rheumatism prior to the visits of Dr. Welch to her in 1907, because said testimony was hearsay and self-serving and there had been no proper predicate laid therefor, as set forth in defendant's bill of exceptions No. 7."

Dr. Welch testified: "Mrs. Williams was present when Mr. Williams made the statement that she had been suffering with rheumatism for years." Mrs. Williams being present relieves her statement of the objection that it was hearsay.

The other assignments relate to statement Dr. Welch denied making to appellant. We think the testimony was admissible, and said assignments are overruled.

Complaint is made of the following paragraph of the court's charge, towit: " 'Our law provides that every railroad company doing business in this State shall keep its depot or passenger houses in this State lighted and warmed and open to the ingress and egress of all passengers who are entitled to go therein, for a time not less than an hour before the arrival and after the departure of all trains carrying passengers on such railroad; and every such railroad that fails or refuses to comply with this provision shall be liable to any party injured for all damages by reason of such failure,' and you are charged that the evidence shows that in this case there was a failure on the part of the defendant railway company to keep its depot or passenger house at Brashear warmed for a time not less than one hour before the arrival of its passenger trains on the morning of the 17th day of April, 1908, and is liable to plaintiff for any damages she may have sustained on account of any exposure on account of cold, if any, that she may have been subjected to on this occasion." This charge under the facts, we think, is erroneous, in that, it assumes the defendant to be negligent in not having a fire in the waiting room of the depot on that occasion. The evidence shows that there was no fire in the depot, it is true, but whether or not the temperature of the weather was such as to make it a duty to have a fire in the depot, was a question for the jury to determine from the facts adduced on the trial. Gulf, C. & S. F. Ry. Co. v. Turner, 93 S. W., 195; International & G. N. Ry. Co. v. Doolan, 56 Texas Civ. App., 503 (120 S. W., 1120).

The complaint of appellant is to the court's charge on the measure of damages, because a recovery was not limited to the exposure to the cold and unheated room to the one hour just preceding the arrival of the train. There was evidence tending to show that appellee reached the depot some twenty minutes before the time the road was required by law to have its depot heated, if it was necessary; but this complaint should not be sustained, as special charges curing this defect were asked by appellant and given by the court, and no injury resulted to appellant from such defective charge.

We see no reason to sustain the other assignments of error presented by appellant.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*