This suit was instituted by appellant to recover from appellees one-third of the funds which they had received in the sale of an oil and gas lease on 40 acres of land. It appears that the land was owned by Mrs. Blumrosen, appellant's mother, and that appellant, acting under a supposed power of attorney, leased the same to appellee Burke, under an agreement whereby appellees Burke and Gottlief and appellant, Blumrosen, were to be the joint owners of the lease; each having a one-third interest therein. Appellees paid appellant for Mrs. Blumrosen $2,000 for the lease; she retaining the usual one-eighth royalty. Immediately after appellant executed the oil lease to Burke, he (Burke) executed a lease conveying a one-third interest to appellant, which lease, however, was never recorded. It appears that the lease was made by appellant to Burke the day the discovery well came in in the Powell field. This land being only a short distance from said well, the value of the lease immediately became very much enhanced. Mrs. Blumrosen, who was living in Dallas, at once came to Corsicana, where appellant, her son, and the other parties were living, to make an investigation to see whether she had been in any way defrauded. She was then told by her attorney of the defect in the power of attorney held by her son and was advised by her attorney that she could break the lease which her son had made. She expressed her entire willingness to let the lease stand, with the full knowledge that her son was to retain in his individual capacity the one-third interest, provided she had not been in any way unfairly dealt with. Appellant and appellees, with their attorneys, urged her to ratify in writing the lease which her son had made. After she had made some investigation, she verbally claimed that the conditions had been falsely represented to her, in that she had been told that no additional development had been made in the oil field, and she had learned that at the time the lease was *Page 988 
made the well was already in, and she refused to ratify in writing the lease as made by her son, and also failed to tender back the $2,000 which she had received from appellees for the lease. Mrs. Blumrosen opened up negotiations with the parties, appellant, appellees, and their attorneys, seeking to obtain a compromise settlement. She at first offered to permit the lease to stand on 6 acres if they would release the other 34, and then offered to let it stand on 17 acres if they would release 23, and finally, on May 8th, four months after the original lease was executed by appellant for his mother to Burke, a compromise was effected, under the terms of which Mrs. Blumrosen, in addition to the $2,000 she had already received, was to receive one-half of the net proceeds obtained from the sale of the lease, and her son-in-law Garonzik, as agent for all parties, was to sell the lease and receive 10 per cent. commission for making the sales. During all the negotiations, appellees as well as appellant would not concede that the lease which appellant had executed to Burke was not binding, but they insisted and contended that same was valid, and that, if appellant did not have the authority under the power of attorney to make the lease, same was nevertheless binding, because Mrs. Blumrosen, with all the facts before her, had ratified the same. Garonzik sold the lease on the 40 acres in three separate tracts — 12 acres to the Gulf Refining Company for $30,000 in cash, 12 acres to the Humble Oil 
Refining Company for $30,000 in cash, and the remaining 16 acres to the Simms Oil Company for $28,800 cash and $52,800 to be paid from the oil as same was produced. Garonzik retained 10 per cent. commission, and one-half of the remainder he paid to Mrs. Blumrosen and one-half to Burke and Gottlief, and this suit was brought by appellant against Burke and Gottlief to recover one-third of the amount paid to them from the sale of said leases.
The cause was tried to a jury, submitted on special issues, and resulted in a judgment being entered denying appellant any recovery. Appellees contend that appellant is not entitled to recover, because the lease as made by him for his mother to Burke on January 8th was void, since he did not have the right under his power of attorney to execute it, and further because he was acting in a dual capacity and could not reap any benefit from a contract which he made growing out of his fiduciary relationship to his mother. They further contend that in the final compromise settlement he was eliminated, and that under said compromise they were to receive one-half and Mrs. Blumrosen the other half of the proceeds of the sale. Appellant contends that the lease contract which he executed in his mother's name to Burke was valid, and that, if the same was not valid, his mother ratified it after knowing all the facts. He further contends that, by reason of the agreement he had with appellees and the execution of the lease made to him by Burke of a one-third interest in the mineral rights, he thereby became the owner of said one-third interest, and was entitled to one-third of the proceeds received from the sale thereof. He further contends that he had not at any time or in any way relinquished, surrendered, released, or transferred any portion of his interest in and to the mineral rights on said land, and he claims that, since Burke, the record owner of the lease, had transferred and sold all of the mineral rights, including the portion which he (Burke) had transferred to appellant, that he was entitled to recover from appellees one-third of the net amount which had been paid to them from the sale of said leases.
The testimony is rather voluminous. It appears without dispute, however, that, if the lease contract as made by appellant for his mother to Burke on January 8th, was valid and binding, appellees and appellant had an agreement and understanding that they were to own the lease one-third each, and, according to Burke's testimony, were to be partners in the handling thereof. We do not agree with appellees' contention that the lease as executed by appellant for his mother was absolutely void. It may have been voidable at the election of Mrs. Blumrosen. Since, however, she did not repudiate same, and agreed that one-half of the property should be subject to the lease as made by her son, the title to said portion remained in appellant and appellees under the terms of their original agreement, unless appellant and appellees mutually agreed to some change therein. Appellee Burke having transferred by regular written assignment a one-third interest of his mineral rights in said land, same became vested in appellant, and it is a well-recognized principle of law that the owner of mineral rights has an interest in the land, and that to convey same it must be by an instrument in writing, properly executed and delivered. First State Bank v. Bland (Tex.Civ.App.) 291 S.W. 650, and authorities there cited. Mrs. Blumrosen, if she had seen fit, might have canceled the lease which her son had executed. All parties as well as their attorneys recognized that it was a debatable question whether the lease was valid and binding. It appears without dispute that, before appellant executed the lease, he called his mother over the telephone and explained to her fully that he was to get $2,000 for her for the 40 acres of land and that he was to have as his individual property a one-third interest in the lease. The $2,000 was paid, and Mrs. Blumrosen did not at any time offer to return same, and her main complaint seems to have *Page 989 
been that the discovery well had been brought in at the time the lease was made and that she had been told that no new developments had taken place. She did not bring any suit to set aside the lease which her son made; neither did appellant or appellee bring any suit to enforce said lease or test its validity. Appellant was actively engaged with appellees in seeking to get the matter adjusted, and made one or more trips to Dallas with appellees' counsel, attempting to get Mrs. Blumrosen to in writing ratify the lease, or to make some adjustment. A number of conferences were held when appellant, appellees, and the attorneys and representatives for Mrs. Blumrosen were present, and until the compromise was finally agreed upon no suggestion was made that the compromise settlement was not being attempted for all parties. Appellees do not claim that appellant at any time transferred, assigned, sold, or released his interest to them. The compromise agreement finally made was that Mrs. Blumrosen would retain the $2,000 and receive one-half of the amount for which the leases were sold. We think the effect of this compromise settlement inured to the benefit of appellant equally with each of appellees, and that the original contract as made between appellees and appellant, whereby they would own same one-third each, remained in existence; and, unless appellant surrendered, released, or transferred his interest to appellees, he was entitled to one-third of the amount which they received from the sale of the entire interest in the lease. It appears that, when the first 12 acres were sold to the Gulf Refining Company, appellant and appellees Joined in a transfer of their interest in the lease to Mrs. Blumrosen, reciting therein that they were the joint owners thereof, and Mrs. Blumrosen then executed a lease to said company for $30,000, and, after paying the commission to Garonzik, she received one-half and Burke and Gottlief the other half thereof. When the second 12 acres were sold to the Humble Oil Refining Company, it required Burke, the party to whom appellant had transferred the lease, and Mrs. Blumrosen to execute the lease, thereby transferring the title to said company, and it paid $30,000, which was divided the same as the proceeds received from the Gulf Refining Company sale. When the last 16 acres were sold to the Simms Oil Company, appellant made an assignment to his mother as was done in the sale of the 12 acres to the Gulf Refining Company, and Mrs. Blumrosen, Burke, and Gottlief joined in the lease to the Simms Company. It appears from the testimony that, as Garonzik, the agent of all parties, made sales, the title to the lessees was obtained in the manner and form as required by the respective attorneys representing the purchasers.
The issues submitted by the trial court were all of an evidentiary nature, and did not, as contended by appellant, submit the real issues in the case. As we view the record, the real issue to be determined was whether appellant had sold, transferred, assigned, surrendered, or in any way relinquished his right to his portion of the proceeds received from the sale of the leases, and these issues were not in any way submitted by the court, though same were requested by appellant. The issues submitted by the court as to whether certain conversations occurred at certain places, or with reference to who was attempting to make compromises and for whom, and as to whether appellees at any time told appellant they would not pay him any portion of the proceeds, or whether appellant claimed any portion thereof, were only evidentiary facts, and were not the controlling ultimate issues to be determined. We sustain appellant's objections to the issue as submitted, as well as his assignments because the court failed to submit the controlling issues in the case.
Appellant objected to the action of the trial court in permitting certain witnesses to testify to the good reputation for truth and veracity of appellee Gottlief. This testimony should have been excluded. Unless a witness' reputation for truth and veracity has been attacked, the trial court should not permit testimony to be offered to prove his good reputation. M., K. T. Ry. Co. v. Williams,63 Tex. Civ. App. 368, 133 S.W. 499; T. P. Ry. Co. v. Raney,86 Tex. 363, 25 S.W. 11; Tweed v. Western Union Telegraph Co.,107 Tex. 247, 166 S.W. 696, 177 S.W. 957; G., C. S. F. Ry. Co. v. Younger (Tex.Civ.App.) 40 S.W. 423.
We have not attempted to discuss each of the numerous assignments of error raised by appellant. Appellant having requested the issues to be submitted, the trial court was not authorized to find that appellant had in any way relinquished, released, transferred, or surrendered his claim to his third of the proceeds of the sale. We do not think appellees are in a position to complain of any invalidity in the lease contract which was executed to them by appellant, because, if it was for any reason invalid, they would not have been entitled to recover or retain any benefits therefrom, and the record shows without dispute that they were fully cognizant of all the facts surrounding the fiduciary relationship which existed between appellant and his mother. There is no evidence in the record of any fraudulent acts between appellant and his mother, and nothing to show that she was in any way overreached, except her contention that the lease was much more valuable at the time of the sale than same was represented to her to be, and the evidence seems to show beyond question that, if this fact were true, appellees *Page 990 
were as fully cognizant thereof as was appellant. Mrs. Blumrosen had a right to waive the cancellation of the lease as made by her son, and appellees and appellant had a right to waive the full performance on her part of its terms. All of the parties at interest did by mutual consent compromise the issues and matters between them, and agreed to divide the revenue received from the sale of the lease on a fifty-fifty basis. The question of the cancellation of the lease and the repudiation thereof because of the dual capacity of appellant, and all kindred questions, were by virtue of the compromise eliminated.
For the errors indicated, the judgment of the trial court is reversed, and the cause remanded.