Fred S. DOTSON, Appellant,

v.

ROYAL INDEMNITY COMPANY, Appellee.

No. 16872.

Court of Civil Appeals of Texas.

Fort Worth.

March 15, 1968.

Rehearing Denied April 19, 1968.

Ray Gene Smith, Wichita Falls, for appellant.

Fillmore & Fillmore, and H. Dustin Fillmore, Wichita Falls, for appellee.

## OPINION

LANGDON, Justice.

This is a workmen's compensation suit.

The jury, among other findings favorable to the claimant, found in its answers to Special Issues 2, 3, 6 and 11, respectively, that the claimant sustained an injury on November 6, 1964, which was accidental and a producing cause of the total and partial disability which it found.

Motions for judgment on the verdict and for judgment non obstante veredicto were filed by the plaintiff and defendant, respectively. The court finding no evidence of probative value in support thereof disregarded the jury findings above described and rendered judgment non obstante veredicto for the defendant.

The appellant by four points of error contends that there was evidence in support of the jury findings which were disregarded by the court and therefore the court erred in overruling his motion for judgment and in granting the defendant's motion for judgment non obstante veredicto.

We affirm.

The claimant was an employee of the Longhorn Motor Company. He was assigned to the parts department which involved putting up stock and delivering. He used a pick-up truck for deliveries. The items delivered were "from spark plugs up to motors." On November 6, 1964, he went to work at 7:30 A.M. and assisted in unloading a shipment of parts from a big six-wheeler truck. Thereafter he loaded his pick-up with items, including tune-up parts and four boxes of brake shoes, for delivery. Enroute he stopped at a red light. He started up, changed shifts, put his hands up and experienced pain in his shoulders and "I had pains in my chest." This was about 4:30 P.M. Up to this time he felt fine and had felt fine all day. He kept on driving to the point of delivery. In making the delivery he placed some items on a shelf, "and then another pain hit me and I dropped down in a chair, that was setting there." As he sat there his shoulders were hurting and his hands got numb. He had no feeling in his hands at all. He could not even hold a pencil. After completing the delivery the claimant drove back to Longhorn Motor Company and thereafter went home. He did not work the following day, Saturday. He returned to work the following Monday.

The events above related which occurred on November 6, 1964, form the basis of the claim here involved. At this time the claimant was 64 years of age. At the time of trial, October 26, 1966, the claimant was 66 years of age.

Within a week or ten days after November 6, 1964, and twice more in December, similar episodes occurred. The last one in December occurred two or three weeks prior to January 10, 1965. At this time Dr. Mark E. Huff was called to the claimant's home. He examined the claimant about 11:00 o'clock at night. This was the first occasion on which the claimant had summoned a doctor. He complained of chest pain and shortness of breath. The doctor suggested he go in (to the hospital) to check it out. The claimant decided to wait until morning to see how he felt. Next morning he felt better.

On January 10, 1965, close to midnight, Dr. Huff was again called to the claimant's home. On this occasion, according to Dr. Huff, the claimant, "was having severe chest pain and shortness of breath, which is classical with a coronary and he was admitted promptly to the hospital and put under oxygen, something for pain and electrocardiograms were then run serially, I believe, beginning the next morning."

The hospital records for the period January 10, 1965, to January 29, 1965, date of release, reflected the following information, part of which was based upon history given to Dr. Huff by the claimant and the latter's family:

"CHIEF COMPLAINT: Severe pain and shortness of breath which came on rather suddenly.

"PRESENT ILLNESS: This man has been having some chest pain for the past several weeks. An EKG failed to reveal any evidence of abnormality done a few weeks ago.

"PAST HISTORY: Noncontributory. This man has never had any serious illnesses or difficulty in any way as far as his physical or mental condition. This is the first problem he has had as it so develops.

"SYSTEMIC REVIEW: CARDIAC: Negative except for these episodes of angina-like pain with some shortness of breath and would always come on at night. No edema of feet and ankles.

"DIAGNOSIS: ACUTE CORONARY THROMBOSIS."

Paragraph VIII of the claimant's original petition filed in the district court on September 15, 1965, described the claimant's injuries as follows: "The injuries which Plaintiff received and the manner in which

he received them may be described as follows: He was lifting something heavy and he felt a pain in his chest and his arm felt numb. He has since found out he had had a heart attack." This wording is almost identical with the claimant's description of injury contained in his claim filed with the Industrial Accident Board.

When the claimant was asked who told him that he had a heart attack on November 6, 1964, he answered, "Nobody didn't tell me. I realized—I thought I had one." He testified that neither Dr. Huff or Dr. Barney, had ever told him that he had a heart attack on November 6, 1964.

It is apparent from the pleadings that the only injury complained of and made the basis of the claim for compensation was a "heart attack."

■ Special Issue No. 2, which was answered "yes" reads: "Do you find from a preponderance of the evidence that the Plaintiff sustained an injury on or about the 6th day of November, 1964?" Although the "injury" inquired about could pertain only to the claimed heart attack there is no testimony in the record from the two medical witnesses, Dr. Mark E. Huff and Dr. Donald C. Barney, of Lawton, Oklahoma, in support of such a finding. The latter examined the claimant on May 27, 1966, approximately eighteen months after the November 6, 1964, episode and again on August 23, 1966. There is no testimony based upon reasonable medical probability that the claimant sustained a heart attack or that his heart sustained any damage or injury on the date in question. We have carefully examined the record in this case and have concluded that claimant as of the date in question proved only that he had some chest pain which put him on notice that he had a coronary insufficiency caused by arteriosclerosis (hardening of the arteries), enlarged heart, or some other disease which affected the flow of blood to his heart and thus was a candidate for a heart attack. No such attack occurred on November 6, 1964, and there was no injury to the heart. The pain was transitory. When the pain left, the disease remained. The pain did not cause the disease. It was merely a symptom.

In Scott v. Liberty Mut. Ins. Co., 204 S.W.2d 16 (Austin Civ.App., 1947, ref., n. r. e.), it was said that, "Under Art. 8307, Sec. 5, Vernon's Ann.Civ.St., the burden of proof to show a compensable injury is upon the claimant. And under Art. 8309, a compensable injury includes not only damages or harm to the physical structure of the body but 'such diseases or infection as naturally result therefrom.' * * * It is true that an injury may be compensable, even though aggravated by an existing disease, or by a disease occurring after the injury. Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356, 357; Texas Indemnity Ins. Co. v. Godsey, Tex.Civ.App., 143 S.W.2d 639, 642. But there must be proven a causal connection between the accident and the ultimate death or disability. And this connection must appear from facts proven from which such connection may be reasonably inferred. The mere possibility that such causal connection exists is not sufficient. The rule stated in 32 C.J.S., Evidence, § 1044, p. 1131, is:

" 'An inference can be drawn only from the facts in evidence, and cannot be based on surmise, speculation, conjecture, or guess; it must be reasonably drawn from, and supported by, the facts on which it purports to rest, and must be made in accordance with correct and common modes of reasoning. An inference has been required to be based on probabilities, and not on mere possibility or possibilities; but according to other authorities, probabilities, as distinguished from facts proved, will not support an inference.'

"See also Federal Underwriters Exchange v. Edwards, Tex.Civ.App., 146 S.W. 2d 461, 463.

"The rule is now settled that a jury is not bound by the opinions of experts elicited through hypothetical questions, where the jury itself can, in the light of their own common experience and the other evidence, reasonably reach a different conclusion. Maryland Cas. Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62, 64; Traders & General Ins. Co. v. Turner, Tex.Civ.App., 149 S.W.2d 593. But there are certain scientific fields wherein the average juror or layman does not possess the knowledge or information from which to draw his own conclusions; and must be guided by the opinions of experts who have acquired scientific information on the subject. Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943, 945; Lumberman's Mutual Cas. Co. v. Vaughn, Tex.Civ.App., 174 S.W.2d 1001. The cause, diagnosis and treatment of diseases usually come within this category. * * *

"In brief, and without discussing or attempting to differentiate the many cases cited by both appellant and appellee, and taking appellant's evidence in its most favorable light, he proved nothing more than that an accident occurred to his eye in March, 1944, which irritated and inflamed it at the time; that such inflammation was acute and disappeared as the result of treatment; that the growth on his eye was not then malignant; that in February, 1946, same was malignant; and that the accident might possibly have been a contributing cause. Not only is such possibility contradicted by the expert opinions of his own doctors, but in the absence of further evidence, does not, under the decisions, constitute any competent evidence of causal connection between the accident and the injury. * * *"

The opinion of this court in Travelers Ins. Co. v. Blazier, 228 S.W.2d 217 (1950, dism.), citing Scott v. Liberty Mutual Ins. Co., supra, contained the following language:

"Certain rather well settled rules of evidence are applicable to the situation before us. The opinion evidence of a physician is but evidentiary and is never binding upon the trier of facts. The court or jury may reject all of the theories of one physician and adopt the theories of another, or the conclusions of a witness may be adopted in part and rejected in part. Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W. 2d 345. But the rule allowing the trier of facts to adopt in part and reject in part the conclusions of a witness is subject to the qualification that his testimony must be examined as a whole to give true effect to it, and that the court will look to all of the testimony of the witness to determine its legal sufficiency to support the findings of judge or jury that are essential to the case of the prevailing party. Jones v. Traders & General Ins. Co., 140 Tex. 599, 169 S.W. 2d 160. There must be evidence tending to support the facts assumed in a hypothetical question. Missouri, K. & T. R. Co. of Texas v. Williams, 63 Tex.Civ.App. 368, 133 S.W. 499. The party who calls a witness thereby vouches for his credibility and is bound by his testimony, save that it is permissible to contradict the testimony of one's own witness by independent facts showing its falsity or inaccuracy. Whitefield v. Whitefield, Tex.Civ.App., 160 S.W. 2d 306, writ ref. w. o. m.

"In Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943, as well as in many other cases that could be cited, it is recognized that lay witnesses may give opinions concerning many matters pertaining to sickness or good health, and that the opinions of experts, although persuasive, is not conclusive under most circumstances. But there are some subjects about which it is only the opinions of experts that have any value as evidence, and about which it cannot properly be assumed that laymen can form correct opinions either from their own knowledge and experience or from opinions expressed by lay witnesses. It cannot be doubted that diagnosis of the disease of poliomyelitis and the question of its cause are such subjects. Lumbermen's Mut. Casualty Co. v. Vaughn, Tex.

Civ.App., 174 S.W.2d 1001. * * * But where the question to be determined was whether appellee had polio or a heat stroke, or whether he had a heat stroke which in turn contributed to or brought about polio, it is our belief that the subject was one so peculiarly within the realm of sceintific knowledge that the trial court was not authorized to make a diagnosis, so to speak, contrary to that made by the only medical witness. Nor do we believe that the judgment is sustainable on the ground that the trial court had a right to adopt in part and to reject in part the opinions of Dr. Rogers. As is said in Jones v. Traders & General Ins. Co., supra, we must look to all of the testimony of the witness to see what he really said. It is not permissible to use the rule allowing adoption in part and rejection in part of the testimony of a witness, in such manner as will give to his testimony a meaning that it could not have in the light of all that he said. The judgment of the trial court can be upheld only on the ground that appellee's only witness, Dr. Rogers, was wrong in his diagnosis of the case. No other witness undertook to diagnose the case. We are driven to answer the precise question: Was the trial court, in the absence of an opinion from any witness, lay or expert, to the effect that appellee had a heat stroke, authorized to make a diagnosis of the illness different from the only diagnosis made by the single witness who testified on the subject? It is our holding, under the record before us, that he was not. * * *

"Because it is shown without dispute, by the testimony of appellee's own witness, that appellee did not suffer a heat stroke, and because there is no evidence of probative value tending to show that the polio infection naturally resulted from a heat stroke, it must be held that appellee is not entitled to recover."

■ In the instant case involving arteriosclerosis (hardening of the arteries), enlarged heart, blood clots and other items described by the medical witnesses as being a part of the aging processes and the effect of same upon the heart were matters which were peculiarly within the medical experts' knowledge and their unanimous findings were conclusive. These were matters of which a layman can have little, if any, knowledge. He can only guess or surmise. Mere speculation or conjecture is not sufficient. It is a matter of common knowledge that many diseases have symptoms similar to those suffered by victims of heart attacks.

This is not a case in which the jury could reject the testimony of one medical witness and accept that of the other because here neither of the medical witnesses testified that the claimant sustained a heart attack on the date in question or that his heart sustained an injury or damage. On these matters the medical testimony is not in conflict.

In 100 C.J.S. Workmen's Compensation § 555(5), pp. 673–674, it is stated: "Expert or medical testimony is necessary, however, in cases where there is a serious question resolvable only by skilled determination, and which is not within the knowledge of lay witnesses or members of the fact finding tribunal, as to prove that an internal injury has in fact occurred, the nature of the injury, or whether a death is the proximate result of an injury, as where the issue relates to a causal connection between an injury and a subsequent condition which involves only a scientific inquiry and there is no obvious causal relationship between the accidental injury and the disability or death, or where the question is of the causal connection between an accidental injury and a disease which appears sometimes later in the injured person, or where death occurs long after the accident, or where the disability is far removed, in point of time, from the accident."

In John Hancock Mutual Life Insurance Co. v. Cooper, 386 S.W.2d 208 (Houston Civ.App., 1965, no writ hist.), it was held:

"While as a general rule expert medical opinion is not binding on the jury and may

be discarded in favor of opinions given by lay witnesses concerning many matters pertaining to sickness or good health, on some subjects only the opinions of experts have any value as evidence, since it cannot properly be assumed that laymen can form correct opinions either from their own knowledge and experience or from opinions expressed by lay witnesses. The diagnosis and proper treatment of the disease of cirrhosis of the liver would appear to be such a subject. Scott v. Liberty Mutual Ins. Co., Tex.Civ.App., 204 S.W.2d 16, writ ref., n. r. e.; Travelers Ins. Co. v. Blazier, Tex.Civ. App., 228 S.W.2d 217, writ dism."

In the case of Insurance Company of North America v. Myers, 411 S.W.2d 710 (Tex.Sup., 1966), it was said: "Reasonable probability, in turn, is determinable by consideration of the substance of the testimony of the expert witness and does not turn on semantics or on the use by the witness of any particular term or phrase. We have established the rule of reasonable probability in analogous situations. Expert medical testimony predictive of what will happen in the future from a present injury is confined to reasonable medical probabilities, i. e., results reasonably to be anticipated. Houston & T. C. Ry. Co. v. Fox, 106 Tex. 317, 166 S.W. 693 (1914); Galveston, H. & S. A. Ry. Co. v. Powers, 101 Tex. 161, 105 S.W. 491 (1907); Lentz v. City of Dallas, 96 Tex. 258, 72 S.W. 59 (1903); Gulf, C. & S. F. Ry. Co. v. Harriett, 80 Tex. 73, 15 S.W. 556 (1891)."

Traders & General Ins. Co. v. Rooth, 268 S.W.2d 539 (Waco Civ.App., 1954, ref. n. r. e.) has no application. There it was stated: "Compensation benefits can be awarded if the workman, as a result of job exertion, sustains hemorrhages, ruptures or heart attacks, notwithstanding the fact that predisposing factors contribute to the incapacity or death." (Citing authorities) In the Traders & General case there was medical testimony to support the jury verdict. Here there is none nor is there any finding of exertion or strain producing any injury.

Texas Employers' Insurance Association v. Brogdon, 321 S.W.2d 323 (Fort Worth Civ.App., 1959, ref. n. r. e.), or Midwestern Insurance Company v. Wagner, 370 S.W.2d 779 (Eastland Civ.App., 1963, ref. n. r. e.) citing with approval Travelers & General Ins. Co. v. Rooth, supra, has no application to the facts of the instant case. The issue in the Midwestern Insurance Co. case inquired as to whether or not W. H. Wagner suffered a heart attack as the result of a strain or over exertion. The jury's affirmative answer to this issue was supported by the medical or expert testimony.

▇ The Workmen's Compensation Act not only should be, but is, liberally construed in favor of the insured. Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1402 (1922). It does not, however, provide for health or accident insurance. Southern Casualty Co. v. Flores, 1 S.W.2d 260 (Tex.Com.App., 1928).

▇ In the case under consideration, the damage to the physical structure of the body, if any, was previously done by disease, and the disease did not result from any injury received in the course of the claimant's employment. There is no direct causal connection between the employment and the disability complained of.

In view of what we have written to this point we see no necessity in discussing the appellee's crosspoints. All points of error raised by the appellant are overruled and the judgment of the trial court is in all things affirmed.

Affirmed.