**TRADERS & GENERAL INSURANCE COMPANY, Appellant,**

v.

**Bonnie L. NORED, Appellee.**

**No. 16146.**

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 25, 1960.

Rehearing Denied Jan. 6, 1961.

Brown & Murray, and M. Hendricks Brown, Fort Worth, for appellant.

Peery & Wilson and Bob L. Wilson, Wichita Falls, for appellee.

BOYD, Justice.

Traders & General Insurance Company appeals from a judgment for workmen's compensation payments for total and permanent disability, awarded to Bonnie L. Nored in a trial before the court without a jury.

Findings of fact and conclusions of law were filed. The court found that: as a result of his injuries sustained in the course of his employment appellee was totally and permanently disabled; his failure to work substantially the whole of the year as an oil field worker immediately prior to the date of his injuries was due to the fact that there was not available to him a steady job for which he could be regularly employed; he was physically able and willing to work regularly during that time, and wanted to earn as much money as he could; he was looking for work and tried to obtain steady employment, even though steady employment would temporarily cost him his social security benefits; other persons doing the same kind of work as appellee had worked substantially the whole of the year; appellee's weekly wage as computed under Subsection 2 of Section 1, Article 8309, Revised Civil Statutes of Texas, was $97.90; and if his weekly wage were computed under Subsection 3 it would not be less than $60. The court concluded that the wage

rate should be computed under Subsection 2.

Appellant's points for reversal are that: it was error to determine appellee's wage rate under Subsection 2, instead of applying the provisions of Subsection 3; there was no evidence, and the evidence was insufficient, to show that there was another employee of the same class as appellee who worked substantially the whole of the year immediately preceding the date of appellee's injury, in the same or a similar employment, in the same or a neighboring place; if there was such an employee, it was impracticable to compute appellee's wage rate under Subsection 2; the wage rate could not be properly computed to be more than $23.08 per week, whereas the court found that it was $97.90, when computed under Subsection 2, and would be not less than $60 if computed under Subsection 3; and that there was no evidence, and the evidence was insufficient to show that appellee was totally and permanently disabled.

We think the evidence was sufficient to support the finding that other employees of the same class as appellee worked substantially the whole of the preceding year, in the same or a neighboring place. Helms testified that he worked from 301 to 305 days, doing oil well cleanout work, handling rods and tubing, in Archer, Montague, Wichita, and Wilbarger Counties. His earnings for that year were $4,671. Appellant's witness Matthews, an accountant who kept records for Bennett Well Servicing Company, testified that Bennett's records showed that one Thomas worked some 340 to 345 days in 1958, in Young and surrounding counties, most of which was in Throckmorton County, and that his job was to run rods and tubing on a tubing machine. His earnings were $5,857.00 in 1958, and the witness said that there was no substantial difference in Thomas' wages for that calendar year and the year immediately preceding February 3, 1959. In this situation,

we think the court properly applied the provisions of Subsection 2 of Section 1, Article 8309, in computing appellee's wage rate. Texas Employers' Ins. Ass'n v. Ford, 153 Tex. 470, 271 S.W.2d 397; Griffin v. Superior Insurance Company, Tex., 338 S.W.2d 415. We find nothing in the record to indicate that it was impracticable to compute the wage rate under Subsection 2.

It was shown that appellee earned only $1,183 in the preceding year. Appellant says that appellee did not want to earn more than $1,200 per year because it would stop some social security payments which he and his wife were receiving, and that therefore his wage rate should not be computed at more than ½ands of $1,183, or $23.08 per week. Appellee became eligible for social security in May, 1957. He was working and did not then accept the payments. In June or July, 1957, he suffered from hernia, for which he had surgery, and did not work any more that year. His compensation claim was settled for $400. Early in 1958 he began collecting social security payments for himself and his wife in the amount of $160 per month. Appellee testified that he could not live and pay his debts on $1,200 per year plus social security, and began looking for a steady job, and if he found one he would drop the social security benefits. He said he consulted the Social Security Board, and was told that he could drop the benefits and pick them up again "if his job played out." Employment in the oil industry in the area had decreased so that in 1958 and 1959 very few workmen of appellee's class had regular jobs. Appellee said that before his operation for hernia he had steady work almost all the time for fifteen years. He "hardly ever lost a day." During all of the time he was drawing social security he was looking for a steady job, and could not find one. In October or November, 1958, he tried to get steady employment from Freddie Boaz. We think the evidence was sufficient to support the finding that appellee was willing to work regularly even though steady employment

would cost him his social security benefits, and that his failure to work substantially the whole of the preceding year was due to the fact that there was not available to him a steady job for which he could be regularly employed.

The issue as to the extent and duration of appellee's disability was hotly contested, but we cannot agree with appellant that the finding of total and permanent disability is without sufficient support in the evidence. Appellee's medical witness testified that he thought appellee was permanently incapacitated for ordinary labor. Appellant's medical witness testified that he had appellee hospitalized for ten or eleven days, and that appellee came to his office more than fifty times. Most of the office treatment was the application of ultra-sonic rays. He said "Some people it helps remarkably, and others it doesn't do them any good." "Q. Doctor, you don't really know what his condition is at this time with reference to his ability to labor, do you? A. No, sir."

Finding no error, the judgment is affirmed.