The TRAVELERS INSURANCE COMPANY, Appellant,

v.

Roy WOODALL, Appellee.

No. 5524.

Court of Civil Appeals of Texas.

El Paso.

April 4, 1962.

Rehearing Denied April 25, 1962.

Snodgrass, Smith & Rose, Frank W. Rose, Jr., San Angelo, for appellant.

Warren Burnett, Odessa, for appellee.

LANGDON, Chief Justice.

This was an action by Roy Woodall, appellee, against The Travelers Insurance Company, appellant, to recover the maximum amount allowable for total and permanent disability under the Texas Workmen's Compensation Law, with judgment being rendered therefor upon the jury's verdict. A lump sum award was denied upon the jury's failure to find hardship.

Appellant has predicated its appeal upon five points of error. In the first two points appellant contends that the trial court erred in submitting Special Issue No. 14 and in failing to grant appellant's motion for new trial, first, because there was no evidence to support the submission of such issue, and secondly, because the evidence was insufficient to support the submission of such issue.

The appellee, Roy Woodall, was allegedly injured on the first day of his employment for Yale E. Key Oil Well Service Company. He admittedly had not worked in the same or similar employment for substantially the whole of the year preceding the claimed injury, and therefore attempted to establish his average weekly wage under subsection 2 of Section 1, Article 8309, Vernon's Ann.Tex.Civ.St. Special Issue

No. 14 of the court's charge, and the jury's answer thereto were as follows:

"QUESTION NO. 14: Do you find from a preponderance of the evidence, if any, that there was one or more, employees of the same class as Plaintiff working substantially the whole of the year immediately preceding the date of Plaintiff's injury, if any, for the same or another employer, in the same or similar employment, in the same or a neighboring place?

"Answer: 'Another employee has so worked' or 'Another employee had not so worked'.

"ANSWER: Another employee had so worked."

Appellant objected to the submission of Special Issue No. 14, both on the ground that "there was no evidence" and on the ground that "there was insufficient evidence" to support the same. On motion for new trial, appellant urged the same objections against the court's judgment based on the jury's answer to such special issue.

It is noted, however, that the trial judge submitted the wage issue arising under subsection 2 in both affirmative and negative form. Special Issue No. 15 (not answered) made the same inquiry of the jury as Special Issue No. 14, but was submitted in negative form and was to be answered by the jury only in the event that it answered Special Issue No. 14 "another employee had not so worked."

The cause of action alleged here arose prior to the amendment of Article 8309, Section 1, by the Texas Legislature, in 1959, and the case was tried and submitted to the jury under the statute as it existed prior to the amendment thereof.

It is appellant's contention that sub-section 2 of the statute requires that the average weekly wage of an injured employee shall consist of the wage or salary of an employee of the *same class* earned in the *same*

*or similar employment,* and that it is not sufficient to show that another employee was engaged in the same or similar work, but it must also be shown that such other employee was *of the same class* as the injured employee.

The proof offered by appellee on the wage issue consisted of the testimony of one Frank Sandell, who testified that he was Field Superintendent for J. P. (Bum) Gibbons, Inc., a company principally engaged in operating well service units. This work involves the pulling of pipe, tubing and rods; the same type of work that appellee's employer, Yale E. Key Oil Well Service Company, was performing on a lease near Big Lake Texas, on September 21, 1958, when appellee allegedly suffered the injuries which gave rise to this litigation. Sandell testified that he had two employees, each of whom had worked on a well servicing unit in the area around and out of Big Lake for as many as 300 days during the 12-month period immediately preceding September 21, 1958, the date of the alleged accident. One of these employees was a unit operator, who earned in excess of $8,000.00 during this 12-month period; the other was a "swamper", who earned more than $5,000.00 during such 12-month period.

The evidence in this case reflects that appellee was working as a "floor hand" on a well servicing unit at the time of the alleged accident. He was certainly not the operator of the unit; the work of a unit operator having been shown to be equivalent to that of a "driller" on a drilling rig, in that they each run the unit, or rig, and presumably the work of the "floor hands" is performed under the direction of the operator. We do not believe that a "unit operator" and a "floor hand" can be considered employees "of the same class" as required by the statute, even though it may be said that they were engaged in the same or similar employment. If we are correct in holding, as we do, that a "unit operator" and a "floor hand" are not employees "of

the same class", the testimony of the witness to the effect that another employee (who was not a "floor hand") had worked as many as 300 days in the twelve months immediately preceding the date of appellee's alleged injury would be of no value for the purpose of determining the wage rate of a "floor hand", and if this had been the only testimony adduced on the trial, we would be required to sustain appellant's point based on its contention that there was no evidence to support the jury's answer to Special Issue No. 14.

A somewhat different problem is presented in a determination of the question of whether a "swamper" and a "floor hand" are employees "of the same class" within the meaning of the statute. On the rig (the oil well service unit) both employees are "floor hands", and the work of the "swamper", while the rig is in operation, is like that of any of the other floor hands. Appellant does not contend that the "swamper" is paid a higher hourly wage rate than a "floor hand" or that his work on the rig is different from that of any other floor hand. Appellant simply contends that the swamper was apt to work more than a regular floor hand, because in this record it was shown that the swamper, together with the unit operator, worked every time the well servicing unit went out on a job, and that the regular floor hands only worked on jobs requiring four-man crews. Appellant also contends that the swamper had to know how to drive a truck, and since he might be expected to work more days than the other floor hands, he would consequently earn more money. Therefore, a swamper was not of the same "class" of employees as appellee.

We would overrule this contention. The record in this case reflects that both the swamper and the appellee worked as floor hands on oil well servicing units. If a valid difference existed between the two employees, it is one of personality rather than of "class" and, in our opinion, it is the result of a situation where the particular

operator of an oil well servicing unit, having the authority to do so, habitually chooses one individual member of a single class of employees in preference to other employees of the same class whenever the work to be performed requires less than a crew of four. Where it is shown that there is no significant difference between several employees of the same class, the fact that one employee is sometimes favored over another does not remove the favored employee from the class of employees in which he normally belongs. The fact that a baseball player may prefer one bat over another, and therefore habitually uses the same bat, does not, of itself, remove the batter's favorite bat from other bats of the same class to which it belongs.

We hold that there was evidence that appellee and the swamper were employees of the same class. The question, however, was close, and the issue was disputed. Under the circumstances, the trial court very wisely submitted the disputed issue in both the negative and affirmative form, and the jury answered the affirmative issue in favor of appellee. Having reviewed the entire record, we have concluded that the evidence is sufficient to support the jury finding on Special Issue No. 14, and we overrule appellant's points numbers 1 and 2, attacking such finding and the judgment based thereon on the grounds of "no evidence" and "insufficient evidence."

■ The evidence in this case shows that the duties of the swamper were quite similar to those of appellee. It has been held that the statute does not require proof that the labor in which the other employees engaged in the preceding year be identical with the work in which the injured employee was engaged at the time of his injury. "It is sufficient if the labor engaged in by them was of the same class." Texas Employers' Ins. Ass'n v. Butler, Tex.Civ. App., 287 S.W.2d 198 (error ref., N.R.E.); Texas Employers' Ins. Ass'n v. Robison, 241 S.W.2d 339 (no writ history).

■ Appellant's third point of error is based on the contention that the trial court erred in submitting the following special instruction to the jury, because the same was in the nature of a general charge and a comment on the weight of the evidence:

"You are instructed that a person cannot be in law totally and partially disabled at the same time. If the plaintiff was totally and permanently disabled to labor, he could not be partially disabled to any extent for any period of time; stating it another way (meaning the same thing), if plaintiff was partially disabled to any extent for any period of time, he cannot be totally disabled for the same period of time."

Appellant concedes that the above quoted instruction might properly have been given *after* a conflict had occurred in the jury answers to the special issues to which it pertained, but challenges the trial court's right to give such special instruction before any conflict occurred.

The precise instruction has been given in at least two Texas cases *after* a conflict had occurred, and in each instance was held to be a correct and proper instruction. Traders & General Ins. Co. v. Nunley, Tex. Civ.App., 80 S.W.2d 383 (error ref.); Traders & General Ins. Co. v. Carlile, 138 Tex. 523, 161 S.W.2d 484 (Comm.App.).

In the Carlile case the Commission of Appeals, in an opinion adopted by the Supreme Court, discussed the applicable statutes (Articles 2189, 2198, 2185 and 2197, V.A.T.S.), which have since been adopted (either without change or with only minor textual changes) as Rules 277, 286, 272 and 285, Texas Rules of Civil Procedure. In passing on the questions there involved, the court held:

"We conclude that the giving of the charge in question is not the result of a prohibited procedure. * * * the charge is not subject to the criticism

either that it is on the weight of the evidence, or that it is a general charge not permissible in this, a special issue case."

Further, the court made it quite clear that it was immaterial whether such charge was given in its original instructions before any conflict had occurred, or after such conflict had arisen, saying, at page 487 of 161 S.W.2d of the opinion:

"Nor is it material that he give such instruction when neither the jury nor the parties had requested additional instructions. * * * The trial judge in giving the jury in writing the explanation in question did no more than is enjoined upon him in general by that provision of article 2189 (Rule 277, T.R.C.P.) with respect to submitting 'explanations and definitions of legal terms.'"

Appellant's third point is accordingly overruled.

■ Appellant's final points (Points Fourth and Fifth) are based on the contention that appellee's counsel, in final argument to the jury, committed harmful reversible error by commenting, over appellant's objection, that a material witness for appellant, whose testimony was taken by written interrogatories, was not produced before the jury to face them on cross-examination; and in giving his (counsel's) own unsworn testimony as to the ability of the appellant to produce witnesses, if there were any, to contradict the testimony of the appellee.

The argument complained of is preserved by bill of exception and is as follows:

"The next doctor we heard from didn't appear, and of course, that is for you to take into consideration, whether that makes any difference. It was obvious to you from the testimony—"

Appellant's counsel immediately objected "to anything about the doctor testifying by deposition" on the ground that it was irrelevant; that counsel was commenting on Doctor Connery's deposition and that it was improper for counsel to "make any reference as to why he (Connery) wasn't here or anything else in the jury argument". Appellant's objection was overruled after appellee's counsel had stated to the court, "I am not going to say why he wasn't here. I am not going to argue that * * *. I am going to argue the result of his not being here." Thereafter, appellee's counsel argued as follows:

"I want to point out to you that when a man testifies by deposition, whether he be Doctor Connery or any other witness, that there are certain things that aren't going to happen to them. One is: He is not going to be exposed to any contradiction by cross-examination."

Upon objection, the trial court immediately sustained the objection and directed the jury not to consider that part of the argument.

Counsel apologized and stated:

"When I said 'cross examination', I made a mistake. I was talking about the kind of cross-examination where the witness is confronted—where the Plaintiff is confronted by the witness.

"Now, does that or does it not make some difference? The cold words on the written page may permit several interpretations in your mind, but, surely, cross examination as I think of it, might have made some difference in Doctor Connery's testimony

"Also, it was apparent from everything that happened, Doctor Connery was here the last time. Some how or another, he was able to break away and appear at the last trial. He was not able to appear for this trial. I am not permitted to go into the reasons why he was not here. I am simply pointing out to you that he was not here, that

he was not called upon to look at any x-rays and say anything about them, even though the x-rays are here. All we have are the cold questions and answers, and which questions and answers, I think, fairly interpreted, do indicate an injury, and I think you know that is the effect of his testimony.

"Now we heard from Doctor Driscill last. Doctor Driscill was able to be here and was able to be cross-examined, and I ask you, particularly, to take into account the effect of that cross-examination.

"Wasn't his testimony, in chief, his direct testimony, just about as effective as the written questions and answers Doctor Connery put—put before you by Doctor Connery's deposition? And, what happened to him when he got on cross-examination? Reluctantly, he admitted that all of the objective findings which were made by Doctor Tull were sure enough there. He admitted he wasn't trying to tell the jury that this injury was not the cause of the objective findings, which he found in the x-rays."

The only objection made by appellant to this entire line of argument was as follows:

"Your Honor, I object to that. The Doctor's opinion was that this injury was not connected—the findings he found were not connected with any injury, as related by Mr. Woodall."

In overruling the objection, the court said: "I think it is a matter of argument. I will let you proceed. It is for the jury to determine what was said."

The foregoing quotations are all from the opening argument made by Mr. Taylor, one of appellee's counsel. Closing argument was made by Mr. Burnett, another attorney for appellee, during which counsel for appellee made the following argument:

"They want to talk about the testimony of Doctor Connery off up there

in Midland, Texas, who either could or would not come down here and face you on cross-examination,—as he did before."

The trial court sustained an objection to this line of argument and instructed counsel as follows: "You could argue he did not come to testify; not that he would not face you on cross-examination, Mr. Burnett."

Assuming (without so holding) that the argument complained of was improper, it is now well settled that before a judgment will be reversed because of arguments of counsel, the argument must not only be improper, but it must be such as to satisfy the reviewing court that it was reasonably calculated to cause, and probably did cause, rendition of an improper judgment in the case. Rule 434, Texas Rules of Civil Procedure; Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596; Texas General Indemnity Co. v. Bledsoe, Tex.Civ.App., 344 S.W.2d 527 (error ref., N.R.E.).

We have considered all the argument set forth in appellant's bill of exception, together with the entire record on this appeal, and are of the opinion that the remarks and argument complained of here, taken either separately or collectively, were not of such prejudicial or inflammatory nature as to cause the jury to render an improper verdict.

We have also carefully considered appellant's contention that appellee's counsel, in closing argument, gave his own unsworn testimony as to the ability of the appellant to produce witnesses, if there were any, to contradict the testimony of appellee. No useful purpose would be served in setting out that portion of the argument in this opinion. Appellant made no objection to such argument until it was assigned as error in appellant's motion for new trial. If there was error in such argument, in the absence of any objection having been made to it at the time, we are

of the opinion that such argument was not of the character that would warrant this court in ordering a reversal thereon, especially where no objection or other exception was taken at the time the alleged improper argument was made.

Appellant's points, and each of them, are overruled, and the judgment of the trial court is affirmed.