**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**C. A. McMAHON, Appellee.**

No. 7562.

Court of Civil Appeals of Texas, Beaumont.

May 2, 1974.

Rehearing Denied May 16, 1974.

Second Rehearing Denied June 6, 1974.

Zeleskey, Cornelius, Rogers, Berry & Hallmark, Lufkin, for appellant.

Seale & Stover, Jasper, Bill A. Martin, Newton, for appellee.

DIES, Chief Justice.

This is a workmen's compensation case. Plaintiff C. A. McMahon received judgment from Texas Employers' Insurance Association, defendant, for the total loss of use of the left hand, from which insurer brings this appeal.

■ Appellant's first three points attack the jury's finding (S.I. 9) that another employee of the same class as plaintiff worked at least 210 days of the year immediately preceding plaintiff's injury, because plaintiff had purposely limited himself to earning not more than $1,680 per year to protect his Social Security benefits. Plaintiff at the time of injury was hauling pulpwood, and the evidence of these workers' wages as a "class" was general. Defendant's contention is that plaintiff's situation of intentional limitation in earnings to protect his Social Security was unique and took him out of the "class" of pulpwooders not so confined. We disagree and follow the holding of Traders & General Insurance Company v. Nored, 341 S.W.2d 492 (Tex.Civ.App., Fort Worth, 1960, error ref. n.r.e.).

Defendant urges that the distinction in the *Nored* case is that plaintiff there testified he was willing to and would accept employment if it was available even though it would deprive him of Social Security benefits.

In our case, plaintiff stated he didn't work 210 days in the year preceding his injury because, "I didn't want to bother my social security."

We are unwilling to make this distinction. To do so would open up a new "class" of seasonal employees, such as summer students, whose wage rates would not only be difficult to determine. but would put them in an inferior category even though they were performing identical duties of non-seasonal employees. These points of error are overruled.

Appellant's points four, five, six, seven, eight, nine, and ten attack the sufficiency

of the evidence to support the wage finding (S.I. No. 9). The contention is that plaintiff was paid by the load, and Cobb's testimony concerned employees who were paid by the hour. Hence, this testimony concerned employees of a different "class" than plaintiff.

Special Issues Nos. 9 and 10 and their answers follow:

"Do you find from a preponderance of the evidence that there was another employee of the same class as the plaintiff, C. A. McMahon, who worked at least 210 days during the year immediately preceding plaintiff's injury, if any, in the same or similar employment in the same or a neighboring place?

\* \* \* \* \* \*

"Answer: 'Another employee had so worked.'

\* \* \* \* \* \*

"What do you find from a preponderance of the evidence to be the average daily wage earned by such employee, if any, in such employement during the days actually worked?

\* \* \* \* \* \*

"Anwer: '$16.00.' "

Plaintiff was asked:

"Q  Do you know that there were people who worked in the woods for Everett Cobb and for other employers in Newton County doing the same kind of work you were doing for at least 210 days during the year preceding May 3, 1972?

"A  Yes, sir.

"Q  All right, sir.  Now then, was there a going pay that you and these other men received for working out there?  Did you receive so much a load or how were you paid?

"A  I was paid by the load.

"Q  How much a load?

"A  I was paid eight dollars.

"Q  All right.  And were there other employees out in the woods who received the same kind of pay, eight dollars a load?

"A  Yes, sir.

"Q  And these—these employees that you say that you knew there were some who worked at least 210 days, do you know some of those who were paid eight dollars a load?

"A  Yes, sir, I believe so.

\* \* \* \* \* \*

"Q  [B]ut I'm talking about in a day, give me an average that you'd make in a day?  We've got to pin it down to a daily average, Mr. McMahon?

"A  Well, we could go—I believe I'd be safe to say make a average of sixteen dollars.

"Q  All right.  And—and then a person who worked however many days he worked, you say it would be safe to say that that man would average sixteen dollars a day doing the same type of work you were doing?

"A  Uh Huh."

The pulpwood producer, Everett Cobb, gave the following testimony:

"Q  Well, if they just averaged four days a week, they'd work 210.  You certainly can say that you had some at least who did that well?

"A  I had some to do better than that, some do worse than that.

"Q  That's fine.  You did have some that did better than that?

"A  That's right.

\* \* \* \* \* \*

"Q  You pay yours two-and-a-quarter to two-and-a-half an hour?

"A  That's right.  That's exactly right. Got to.  This day and time.

\*    \*    \*    \*    \*    \*

"Q.  And two years ago you worked five days a week?

"A  Right.  That's right.

"Q  Regularly?

"A  Yes sir.  Tried to.

\*    \*    \*    \*    \*    \*

"Q  But what I'm saying is a man who is helping a subcontractor was opposed to a man doing for you, if they're both skidding or if they're both hooking tongs, they were doing the same work, it was just that you paid one of them directly and in the other case it's up to the subcontractor to pay them?

"A  That's right."

"One of the underlying purposes of our compensation statutes is to compensate an injured employee, not merely for loss of earnings, but for loss of earning capacity, at a wage rate based on his capacity to earn when employed on a full-time basis." Texas Employers Ins. Ass'n v. Clack, 134 Tex. 151, 132 S.W.2d 399, 401 (1939).

■■ Under subsection 2 of Art. 8309, § 1, Vernon's Ann.Civ.St., the criterion is the wage of "an employee of the same class." 63 Tex.Jur.2d, Workmen's Compensation, § 172, p. 80 (1965). We believe "class" refers to the type of employment, not the manner of wage computation. Cobb's testimony clearly establishes that there were other employees doing the same manner of work as plaintiff, who made at least a daily wage equivalent to the jury's finding. We believe this to be sufficient. These points are overruled.

■ Appellant's points eleven, twelve, and thirteen complain of the jury's findings of "permanent" to S.I. No. 3 as being unsupported or insufficiently supported by the evidence. Appellant urges that plaintiff's medical witness opined such loss of use to be ten percent.

The plaintiff testified he couldn't do pulpwood work because of his injury; that he was unable to hold things; that he had lost considerable movement of the wrist and his hand was numb.

■ The jury was not bound by the doctor's opinion of disability and could base it on plaintiff's testimony. Great American Indemnity Co. v. Beaupre, 191 S.W.2d 883, 887 (Tex.Civ.App., Dallas, 1945, error ref. n.r.e.); Southern Underwriters v. Sanders, 110 S.W.2d 1258, 1260 (Tex.Civ.App., Amarillo, 1937, error dism.). These points are overruled.

The judgment of the trial court is affirmed.

STEPHENSON, Justice (concurring).

Even though the dissent, as now drawn, contains the statement that no dissent is made to the conclusion reached by the majority as to the "class" of other employees, much is said by indirection.

After stating there is doubt as to the validity of such conclusion, it is observed in such dissent that a part-time able-bodied worker is now a full-time disabled worker. Then, the point is made that the other employees, who worked 210 days during the preceding year, were paid on an hourly basis, while plaintiff was compensated on a piece-work basis. The inference is left that payment by such different methods places plaintiff in a different class so that subdivision two is inappropriate.

The appellant attempts to place a meaning upon the term "of the same class" that no appellate court in this state has ever given it before. All of the cases I have found limit the meaning of that term to the type of work being done, and no suggestion has been made that it is intended to describe the type of person the claimant is. See: Central Surety & Insurance Corporation v. Jordan, 410 S.W.2d 60 (Tex.Civ.

App., Amarillo, 1966, no writ); Blankenship v. Royal Indemnity Co., 128 Tex. 26, 95 S.W.2d 366 (1936); Texas Employers Ins. Ass'n v. Ebers, 134 S.W.2d 797 (Tex. Civ.App., Amarillo, 1939, dism. judgm. cor.); Travelers Insurance Company v. Woodall, 356 S.W.2d 344 (Tex.Civ.App., El Paso, 1962, error ref. n. r. e.); Pan American Insurance Company v. Stokes, 370 S.W.2d 955 (Tex.Civ.App., Amarillo, 1963, no writ).

To attempt to follow the appellant's contention would lead the trial courts of this state into such morass of problems that the trial of compensation cases would become exceedingly difficult when a claimant had not worked 210 days before the accident. Proof that there was, or that there was not, another employee *of the same class* as claimant, who worked at least 210 days during the preceding year, would present too many obstacles. Such factors as the age of the claimant, whether young or old; and the part-time employee, whether after school, during the summer, or other seasonal workers—all would have to be considered.

It is my opinion that the wording of the statute clearly indicates the term *of the same class* refers to the type of work being done, and no other meaning is intended. It is the wage-earning capacity which is protected by the compensation act. Even though the claimant in the case before us may have been limiting his earnings at the time this cause of action arose, he should be free to change his mind just as done by the claimant in the *Nored Case.*

The jury in the case before us, after finding that another employee of the same class as the plaintiff worked at least 210 days during the preceding year, then found the average daily wage of such employee to be $16.00. No complaint is made about the latter finding. All of the evidence in the record shows the average daily wage of this plaintiff, and other employees of the same class, was at least $16.00 per day. The defendant has not been harmed if the computation is done either by the hour or by the load.

I join with Chief Justice DIES in affirming this case.

KEITH, Justice (dissenting).

In order to place my dissent in proper perspective, I point to the obvious fact that the majority opinion divides itself into three distinct segments; viz., (1) the "class" of other employees; (2) the sufficiency of the evidence to support a determination of the wage rate under subdivision 2; (3) the sufficiency of the evidence to support the finding of incapacity.

While I have some doubt as to the validity of the conclusion reached as to the "class" mentioned in section one of the majority opinion, I do not file a dissent thereto.[1] After all, our record presents a case of a plaintiff who was a part-time able-bodied worker who is now a full-time disabled worker.

I confine my dissent to the holding of the majority in the second segment of the opinion; namely, the sufficiency of the evidence to support the recovery under Section 1, subdivision 2, Art. 8309, V.A.C.S. Factually, the evidence quoted in the majority opinion is of less probative value than that examined and found deficient in

---

1. See 2 Larson, Workmen's Compensation Law, § 60.22, for a discussion of employees who have voluntarily removed themselves from full-time employment. Further, the structure of our case is the exact opposite to that shown in *Nored* (341 S.W.2d at 494–495). Nor am I persuaded that the part-time summer student employee will be relegated to an "inferior category"; his path to a recovery was well charted in Texas Employers' Insurance Association v. Shannon, 462 S.W.2d 559 (Tex. 1970). Indeed, if he is a minor, he may do even better than the full-time employee by procuring an instruction under Art. 8306, § 12i, V.A.C.S. See, 2 Texas Pattern Jury Charges, § 23.07, and cases therein cited.

Aetna Insurance Co. v. Giddens, 476 S.W. 2d 664 (Tex.1972).[2]

Secondly, even if we indulge the somewhat doubtful assumption under this record, that there were other employees who actually worked as many as 210 days during the preceding year, it appears that such men were paid on an *hourly* basis while plaintiff was compensated on a piece-work basis. More importantly, perhaps, plaintiff's evidence establishes that some of the men were being compensated at the rate of $2.25 per hour, others were paid at the rate of $2.50 per hour, with plaintiff being paid on the basis of $8.00 per cord.

Although the discrepancy is not as great in our case, a long line of cases has firmly established the rule that where the evidence discloses differing wage rates among similar employees, it is error to submit the wage finding under subdivision 2. See, e. g., Texas Indemnity Ins. Co. v. Smith, 73 S.W.2d 578, 580 (Tex.Civ.App., Amarillo, 1934, no writ); Texas Employers' Insurance Association v. Rigsby, 273 S.W.2d 681, 688 (Tex.Civ.App., Beaumont, 1954, no writ).

In Travelers Insurance Company v. Liptrap, 413 S.W.2d 144, 147 (Tex.Civ.App., Eastland, 1966, error ref. n. r. e.), where the plaintiff did not work regularly as a cab driver (156 days with earnings of $597.58 in the preceding year), the court said:

"The evidence does show that there were other employees who had worked at least 210 days during the year immediately preceding appellee's injury. These employees were also cab drivers paid on a commission basis but their earnings varied from $7.00 to $15.00 per day. None of them received the same amount per day or per week as appellee was paid for his services. Under the evidence it was not practical to compute appellee's 'average weekly wages' under Subdivision (2). The court erred in rendering judgment on the theory of another's employment and earning capacity under the provisions of Subdivision (2) of Section 1 of Article 8309."

The court in *Liptrap,* supra, went on to hold that under the evidence the weekly wage of Liptrap could be fixed only under subdivision 3 of the statute. So it is here; it was error to fix plaintiff's wages under subdivision 2; but, there was evidence which would have authorized a submission under subdivision 3 of the statute had plaintiff procured a finding negating subdivision 2.

Under the authorities herein discussed, I see no alternative to a reversal of the judgment. Defendant, however, points to the fact that plaintiff had the burden of negating the applicability of subdivision 2 before going to subdivision 3, did not assume such burden, and did not submit or request a submission thereof; wherefore, defendant seeks a modification of the weekly compensation benefits to the minimum of $12.00 per week. See Comment and Caveat, 2 Texas Pattern Jury Charges, § 23.04.

I would not perform such drastic financial surgery upon the award since it is apparent that the evidence on the question was not fully developed and the case was tried upon the wrong theory. I would, therefore, reverse the judgment and remand the cause for a new trial for the reasons and following the holding of Aetna Insurance Co. v. Giddens, supra (476 S.W. 2d at 665).

2. This is a part of plaintiff's testimony given on direct examination by his counsel:
"Q But on the average, would you average two loads a day?
"A No, sir, not all the time we couldn't hardly say we'd average two loads because we was in bad places, we was getting hardwood.

"Q All right. Well, in a—in a given week what would you, yourself, usually average making? How much money in a week?
"A You know I didn't—I never—I don't believe I could hardly tell you and be sure about it just what I did make a week."

## ON MOTION FOR REHEARING

DIES, Chief Justice.

Defendant urges that plaintiff's testimony concerning other employees who worked at least 210 days during the preceding year, which was quoted in the majority opinion as supporting the jury finding, was excluded by the court.

On cross-examination, counsel for defendant made a motion to strike which was granted by the trial court; however, the ruling by the court is so general in nature it is difficult for this court to ascertain the specific testimony excluded. In any event, following that action, plaintiff testified he knew that his son had worked for the same employer more than 210 days during the preceding year, which testimony was accepted in evidence without objection. There is also no doubt but that the testimony of Everett Cobb, the employer, supports the jury finding.