**TRUCK INSURANCE EXCHANGE,**
Appellant,

v.

**L. C. CARTMILL, Appellee.**

No. 4284.

Court of Civil Appeals of Texas.

Waco.

Dec. 3, 1964.

Rehearing Denied Dec. 31, 1964.

Baker, Botts, Shepherd & Coates, B. D. McKinney, Houston, for appellant.

Raymond L. McDermott, Mabel Grey Howell, Houston, for appellee.

McDONALD, Chief Justice.

This is a compensation case filed by plaintiff Cartmill against defendant Insurance Company. Plaintiff alleged that he was injured while an employee of Arbuckle Electric Company. Defendant Insurance Company answered that it carried compensation insurance coverage for Arbuckle Electric Company, but that plaintiff was not an employee of Arbuckle, but was an independent contractor at the time of his injury. Trial was to a jury which found that plaintiff was an employee, not an independent contractor; was totally and permanently disabled; that the average daily wage of other employees in the same class

as plaintiff was $20 per day; that a fair weekly wage rate was $23; and that manifest hardship would result if plaintiff were not paid in a lump sum. The Trial Court rendered judgment on the verdict for plaintiff for $13,206.58.

Defendant appeals on 10 points, contending:

1) There is no evidence or insufficient evidence to sustain the finding that plaintiff was an employee of Arbuckle.

2) The Trial Court's definition of "independent contractor" in the charge was erroneous.

3) The Trial Court erred in refusing to admit letters of Arbuckle's lawyer which expressed the opinion that plaintiff was not an employee of Arbuckle.

4) The Trial Court erred in overruling defendant's motion to disregard the finding that another employee in the same class earned $20 per day; and to enter judgment on the finding that $23 was a fair weekly wage rate.

Defendant's 1st contention is that there is no evidence, or insufficient evidence, that plaintiff was an employee of Arbuckle. Plaintiff was a carpenter who was engaged by Arbuckle to do some work on a combination office-residence which Arbuckle was constructing. Plaintiff worked on Friday, Saturday, and until his injury about noon on Monday. Prior work had been done on the building by some of Arbuckle's 4 permanent full-time employees.

The witness Crews testified that plaintiff was engaged by Arbuckle to finish the cornice and close the gables around the building; that Arbuckle told (Crews and plaintiff) what he had in mind, what he wanted done to the building, and explained how he wanted it done; and told them in what sequence to do the work; told us (plaintiff and Crews) to use the scaffold already there; plaintiff went to work on Friday; Arbuckle was there Friday; Arbuckle was there Saturday; looked over the work and told plaintiff (and Crews) what to start doing Monday; Arbuckle made changes in things already done; Arbuckle told exactly how far down he wanted the frieze boards dropped on the eaves; plaintiff was paid by the hour; Arbuckle supervised the job; furnished a radial saw, scaffold and all materials; Arbuckle required a new scaffold to be built on the North side, so that the painters could use the scaffold on the South side; Arbuckle explained how he wanted it fixed underneath the porch on the front side.

Plaintiff Cartmill testified that Arbuckle had wanted to contract the job but that he, Cartmill, refused; that Arbuckle then showed him the ends he wanted gabled up; that he gave him a card and said, "this is who you are working for and who to have the lumber billed to"; Arbuckle directed the work to start on the South side; supervised all of it; designated the materials of redwood and cedar, and where to use them; Arbuckle was on the job 1½ hours on Friday and 1½ hours on Saturday; Arbuckle told what pieces of 2 different materials to get, and how many of each to get; Arbuckle had plaintiff help him fix a power saw; Arbuckle was the boss; if Arbuckle saw something that wasn't done right he would have it changed; if he wanted something done he would say "Do it"; he directed certain boards to be removed; he furnished the scaffold and power saw; he told how he wanted the work done; and went into details about the doing of the work. Cartmill further testified that he performed the details just like Arbuckle said; and that Arbuckle had the right to fire him at any time.

Arbuckle testified that he owned Arbuckle Electric Company; that he employed plaintiff to work; that he, Arbuckle, was at the job Friday and Saturday for 1½ hours each day; that on Friday he had plaintiff change a cornice board that had been nailed up; as well as another board and a facia board; that he "considered plaintiff a part time employee"; that he paid him on an hourly basis; that he out-

lined the work to be done by plaintiff; that he had the right to fire plaintiff at any time; that he gave plaintiff directions in the details of the work, and in changes to be made; that he expected plaintiff to do anything about the premises he instructed him to do; that if plaintiff had not done so he would have been fired; that he exercised the right of control of plaintiff in the way he did the job; that he considered plaintiff an extra employee of the Electric Company.

The record contains other evidence from which it could be inferred that plaintiff was not an employee. . .

◼ As to whether a workman, in a given situation, is an employee or an independent contractor, the *"right to control"* the details of the work, is the supreme test. Newspapers, Inc. v. Love, Tex., 380 S.W.2d 582; Standard Ins. Co. v. McKee, 146 Tex. 183, 205 S.W.2d 362; Halliburton v. Texas Indem. Ins. Co., 147 Tex. 133, 213 S.W.2d 677.

◼ Although much of the evidence recited is applicable only to the right to control results, we think whether or not plaintiff was an employee of Arbuckle, was raised by the evidence, and that the evidence is sufficient to support the finding of the jury. Moreover, from an examination of the record as a whole, we do not think such finding is against the great weight and preponderance of the evidence.

Defendant's 2nd contention asserts that the court's definition of "independent contractor" in the charge was erroneous. Such complained of definition reads:

"By the term 'Employee', as used in this Charge, shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, except one whose employment is not in the usual course of the trade, business, profession or occupation of his employer, provided however, that a person, other than an independent contractor, who is engaged in the work of the employer of enlargement, construction, remodeling or repairing of the premises or buildings used or to be used in the conduct of the business of the employer shall be deemed an employee. An independent contractor as used herein is meant any person who, in the pursuit of a business or occupation, undertakes to do a particular work for another person, and who has exclusive control of such work in respect to the details of the work to be performed, and over whom the person for whom the work is being done has no right of control as to such details, and who represents the will of the person for whom the work is done only as to the result of his work, and not as to the means or methods by which it is accomplished. An employee, as distinguished from an independent contractor, is one over whom the employer retains or exercises or has a right to exercise control in directing, not merely the end sought to be accomplished, but also the means and details of its accomplishment, not merely what shall be done, but how it shall be done."

◼ We have examined defendant's objections to the charge, and consider them too general to specifically point up any complained of error. See: Article 8309, Sec. 1, Vernon's Ann.Tex.St.; Blankenship v. Royal Indemnity Co., 128 Tex. 26, 95 S.W.2d 366; Newspapers Inc. v. Love, Tex., 380 S.W.2d 582.

◼ Defendant's 3rd contention is that the Trial Court erred in not admitting certain portions of letters written by Arbuckle's attorney to the Industrial Accident Board, expressing the opinion that plaintiff was not an employee. Such letters were hearsay and the portion not admitted was properly excluded. Verschoyle v. Holifield, 132 Tex. 516, 123 S.W.2d 878, 885; Bonanza, Inc. v. Lee, CCA (n. w. h.) 337 S.W.2d 437, 439; Washington Nat. Ins.

Co. v. Curry, CCA (n. w. h), 97 S.W.2d 525.

■ Defendant's 4th contention complains that the Trial Court should have disregarded the finding that another employee of the same class earned $20 per day, and entered judgment on the finding that $23 per week was a fair weekly wage rate. Plaintiff had not worked for as much as 210 days during the year preceding his injury, so the Trial Court submitted issues as to whether another employee of the same class as plaintiff had worked 210 days in similar employment, and if so such other employee's average daily wage. The jury found affirmatively as to another employee of the same class and found his average daily wage to be $20. The Trial Court computed its judgment on such basis. Defendant's real complaint is that plaintiff did not earn but approximately $1000 the previous year. The burden was on defendant to show that plaintiff's wages could not be computed under Sub-sections 1 or 2 before resort may be had to Sub-section 3, Art. 8309, V.A.T.S. Texas Employers' Ins. Ass'n. v. Ford, 153 Tex. 470, 271 S.W.2d 397. Moreover, workmen's compensation benefits are paid for disability rather than for actual earnings received. Federal Underwriters Exchange v. Rattler, CCA (n. r. e), 192 S.W.2d 942; Traders & Gen. Ins. Co. v. Nored, CCA (n. r. e.) 341 S.W.2d 492.

All of defendant's points and contentions have been considered and are overruled. Affirmed.