**Martha M. HOLLIMAN, Appellant,**

v.

**LEANDER INDEPENDENT SCHOOL DISTRICT, Appellee.**

No. 13854.

Court of Appeals of Texas, Austin.

Aug. 22, 1984.

Rehearing Denied Nov. 7, 1984.

---

Joe Colbert, Tom A. Stribling, Law Offices of Joe Colbert, Austin, for appellant.

Karen Parker, J. Stockton Williams, Jr., Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., Austin, for appellee.

Before SHANNON, POWERS and BRADY, JJ.

BRADY, Justice.

Appellant Martha M. Holliman filed a workers' compensation suit alleging that on November 21, 1978 she sustained an injury in the course and scope of her employment as a cafeteria manager for the Leander Independent School District. The jury found that appellant sustained some temporary total incapacity and that the injury was a producing cause of permanent partial incapacity. However, because the jury failed to find there was another employee of the same class as appellant who worked at least 210 days of the year immediately preceding the injury, judgment was entered for the school district.

Appellant argues four points of error. Briefly summarized, they are that the trial court erred in entering a take nothing judgment on the verdict because of findings that there was not an employee of the same class who had worked 210 days prior to appellant's injury; that such findings as to appellant's earning capacity during her partial incapacity were against the great weight and preponderance of the evidence; and that the jury's finding of permanent partial incapacity and earning capacity during that time cannot be reconciled.

■ While in the course of her employment at the cafeteria, Mrs. Holliman slipped and fell injuring her shoulder and hip. She was hospitalized and treated for phlebitis which resulted from her fall. She was also evaluated by a neurosurgeon because of concerns that she had developed a lumbar disc problem. Mrs. Holliman was again hospitalized in 1979 and underwent an EMG and a myleogram. The result of these tests indicated that she was unable to further pursue her occupation as a cafeteria manager for the district. She was, however, permitted to return to work as a cashier, which involved mostly sitting. This work involved no heavy lifting, prolonged standing or other duties. At the time of trial, Mrs. Holliman was undergoing physical therapy 2 to 3 times a week and, despite experiencing much pain, she continued to work as a cashier.

At the time of her injury Mrs. Holliman's employment was confined to the school year. She had not worked 210 days as the cafeteria manager immediately preceeding her injury. Thus, she sought to establish her average weekly wage by introducing evidence of the wages of another employee of the same class, Kenneth Odiorne, a cafeteria manager for St. Edward's University. Mr. Odiorne testified that based on his seventeen years as a cafeteria manager, the written job description given for Mrs. Holliman's job with the school district was "very definitely" the standard job description of a cafeteria manager, and essentially, with some variations, the same job he performed for his employer. While the evidence indicated that Mr. Odiorne's work was not identical in all respects to that of appellant's, it was sufficient because he was an employee engaged in similar employment. *Pan American Insurance Co. v. Stokes*, 370 S.W.2d 955 (Tex.Civ.App. 1963, no writ). Both parties to this appeal have cited this case to the court. *See also Texas Employers' Ins. Ass'n v. McMahon*, 509 S.W.2d 665 (Tex.Civ.App.1974, writ ref'd n.r.e.) in which the court stated:

Under subsection 2 of Art. 8309, § 1, Vernon's Ann. Civ.St., the criterion is the wage of "an employee of the same class." 63 Tex.Jur.2d, Workmen's Compensation, § 172, p. 80 (1965). We believe "class" refers to the type of employment, not the manner of wage computation. Cobb's testimony clearly establishes that there were other employees doing the same manner of work as plaintiff, who made at least a daily wage equivalent to the jury's finding.

*Id.* at 668.

A similar statement can be made of Mrs. Holliman. The testimony in this record establishes that she was essentially doing the same manner of work as Mr. Odiorne, and since there were no other witnesses or testimony to refute this evidence, we hold that the "same or similar" requirement was met by appellant. The jury finding to the contrary was against the great weight and preponderance of the evidence before it.

The jury found that Mrs. Holliman's injury was a producing cause of permanent partial incapacity, which the trial court defined correctly to mean "any degree of incapacity less than total incapacity, whereby a person suffers a reduction in earning capacity." By its answer that the claimant sustained permanent partial incapacity, the jury found that she sustained a reduction in earning capacity. The jury also found that her wage earning capacity during this time was $164.80 but it did not find an average weekly wage for Mrs. Holliman prior to her injury. Parenthetically, it should be stated that the claimant at the trial below did not request but affirmatively waived submission to a "just and fair" computation, which appellee argues is fatal to the claim. Since Mrs. Holliman failed to meet her burden of proving a wage rate, appellee argues, she should be denied recovery. We do not agree.

Art. 8309, § 1, subsection 3, states that when by reason of the shortness of the time of employment, as here, or for other "good and sufficient reasons, it is impracticable to compute the average weekly wages as above defined, it shall be computed by the Board in any manner which may seem just and fair to both parties...." In a situation as here where the jury failed to find that there was another employee of the same class as appellant who worked at least 210 days in the preceding year in the same or similar employment and in the same or neighboring place, it would have been desirable for the trial court to send the jury back for further deliberation, under Tex.R.Civ.P. 295, with instructions to compute the average weekly wages of Mrs. Holliman under the Subdivision 3 "just and fair" standard. At least one appellate court in Texas has held that it was the "duty" of the trial court in a non-jury trial to fix a just and fair rate when the first two subdivisions did not apply. *Texas Employers' Insurance Ass'n v. Wade*, 288 S.W.2d 284 (Tex.Civ.App.1956, writ ref'd n.r.e.). Another court has held that the trial court has "broad discretion" in finding what wage rate would be "just and fair" to both parties. *Texas Employers' Insur-*

*ance Ass'n v. Davidson*, 295 S.W.2d 482 (Tex.Civ.App.1956, writ ref'd n.r.e.). The better practice would have been for the trial court to submit conditionally a "just and fair" issue, which may have avoided the resulting conflicting findings of this jury.

This Court has previously held in *Argonaut Southwest Insurance Company v. Morris*, 420 S.W.2d 760, 766 (Tex.Civ.App. 1967, writ ref'd n.r.e.) that a liberal construction of the act requires "but slight proof of the applicable wage rate" where there is no real controversy. Appellee offered no witness or other evidence to refute or rebut the testimony of appellant's witness, Ken Odiorne, the manager of the St. Edward's University cafeteria. *See American General Insurance Co. v. Hightower*, 279 S.W.2d 397 (Tex.Civ.App.1955, writ ref'd n.r.e.), where the court said:

> The language used in the third division of Section 1, supra, leads us to believe that no hard and fast rule of construction should be applied in a way that would deprive an injured employee from proving his right to compensation under our Workman's Compensation Laws.

> \* \* \* \* \* \*

> It is now well settled by our courts that a liberal construction of our compensation law should be applied to afford the relief to injured employees and not to defeat the purposes for which the law was enacted. With this in view, our courts have held that in such cases as this, where there is no real effort made by the insurance carrier to disprove such facts as were established in the manner as was attempted in this case, a small amount of evidence was sufficient to discharge the burden cast upon the employee. [citing *Southern Underwriters v. Boswell*, 141 S.W.2d 442, 450 (Tex.Civ.App.1940), aff'd, 138 Tex. 255, 158 S.W.2d 280 (Tex. 1942) ].

*Id.* at 399–400.

Quoting Chief Justice Pope in *Harris v. Casualty Reciprocal Exchange*, 632 S.W.2d 714, 718 (Tex.1982) on the subject

of liberal construction of the Workers' Compensation laws, he said:

> We have repeatedly held that the workers' compensation act should be given a liberal construction to carry out the legislative plan of compensating injured workers and their dependents.

It has always been the law of this state that the Act is to be liberally construed in favor of the injured worker in order to effectuate the beneficent purposes for which it was enacted. *Ward v. Charter Oak Fire Ins. Co.*, 579 S.W.2d 909 (Tex. 1979, no writ); *Lively v. Blue Cross Hospital Service, Inc.*, 488 S.W.2d 474 (Tex.Civ. App.1972, writ ref'd n.r.e.); *Texas Employers' Ins. Ass'n v. Steadman*, 433 S.W.2d 756 (Tex.Civ.App.1968, no writ); *Dotson v. Royal Indemnity Co.*, 427 S.W.2d 150 (Tex.Civ.App.1968, writ ref'd n.r.e.).

Appellee would have this Court deny any relief to appellant in this case even though the jury found that she sustained permanent partial incapacity while working for appellee in the course and scope of her employment as a school cafeteria manager. We do not think the compensation laws should be so narrowly construed.

Appellant further argues that the trial court should have disregarded or set aside the jury finding that claimant's earning capacity during her partial incapacity was $164.80 per week, since the same was against the great weight and preponderance of the evidence. We agree. The amount found was more than Mrs. Holliman's earning capacity as a cafeteria manager prior to her injuries and the resulting dimunition in her earning capacity. Clearly, these findings are in irreconcilable conflict with the jury's answers that Mrs. Holliman's injury was a producing cause of permanent partial incapacity. The evidence clearly indicated that claimant was unable to return to work as a cafeteria manager but only as a cashier. The evidence further indicated that she experienced much pain and was substantially limited physically as a result of her injury. She could do no stooping, no heavy lifting, and no prolonged standing. Thus, the find-

ing by the jury that Mrs. Holliman could earn more after her injury as a cashier than in her capacity before the injury as a cafeteria manager was also against the great weight and preponderance of the evidence.

The *effect* of the jury's finding here is that there was a reduction in earning capacity but the jury failed to provide the trial court with a fact finding that would permit the court to determine the amount of the reduction in earning capacity. Consequently, there is no way to determine the proper compensation rate to apply during Mrs. Holliman's permanent partial incapacity. The jury's finding of permanent partial incapacity therefore cannot be reconciled with no finding of a wage rate during the twelve months immediately prior to the date of her injury.

We, therefore, under Tex.R.Civ.P. Ann. 434 (Supp.1984) are compelled to reverse this cause and remand the same to the trial court for a new trial.

SHANNON, Justice, dissenting.

I dissent.

Appellant Martha M. Holliman seeks to set aside a take-nothing judgment of the district court of Travis County rendered in a workers' compensation suit after trial to a jury. Appellee is the Leander Independent School District, a self-insurer.

On November 21, 1978, Mrs. Holliman was an employee of the school district, working as the manager of the school cafeteria. On that date in the course of her employment she slipped and fell, injuring herself.

Mrs. Holliman prosecuted a claim for workers' compensation benefits. At trial, the parties joined issue regarding (1) the extent and duration of Mrs. Holliman's incapacity and (2) her average weekly wage.

The jury answered in response to special issues that as a result of the fall, Mrs. Holliman suffered a period of temporary total incapacity and thereafter she suffered permanent partial incapacity. By its answer to special issue six, the jury refused

to find there was another employee of the same class as Mrs. Holliman who worked at least two hundred and ten days in the year immediately preceding November 21, 1978, in the same or similar employment and in the same or a neighboring place. Mrs. Holliman did not request an issue inquiring of a just and fair average weekly wage as of November 21, 1978.

Based upon the jury's answers, the district court rendered judgment that Mrs. Holliman take nothing.

Mrs. Holliman's appellate assault upon the judgment centers upon the question of average weekly wage. It is, of course, the injured employee's burden to establish average weekly wage under one of the three subsections of Tex.Rev.Civ.Stat.Ann. art. 8309 § 1 (1967).[1] *Texas Employers' Insurance Association v. Shannon*, 462 S.W.2d 559 (Tex.1970); *Texas Employers' Insurance Association v. Roberts*, 135 Tex. 123, 139 S.W.2d 80 (1940).

Under subsection 1 of art. 8309 § 1, if the injured employee has worked two hundred and ten days in the same or similar employment (as described in the statute), then *his* wages are to be used to establish his wage rate and the amount of his recovery.

Under subsection 2, if the injured employee has not worked for two hundred and ten days but other employees of the same class have worked at least two hundred

and ten days in similar employment in the same or neighboring place, then the wages of such *other* employee or employees are to be used to determine the injured employee's wage rate.

If neither of the factual requirements of subsections 1 or 2 are present and applicable, resort must be had to subsection 3 which provides for the fixing of the injured employee's wage rate in a manner which is "just and fair" to both parties. *The burden is upon the injured employee to establish by competent evidence that his wages cannot be computed pursuant to subsections 1 or 2 before resort may be had to the "just and fair" provisions of subsection 3. Texas Employers' Insurance Association v. Ford*, 153 Tex. 470, 271 S.W.2d 397 (1954).

As it was stipulated that Mrs. Holliman had not worked two hundred and ten days in the year preceding her injury, subsection 1 was unavailable to compute her average weekly wage. She expressly waived submission of wage rate pursuant to subsection 3. Counsel for Mrs. Holliman stated:

I do at this time waive the pleadings on fair and just and ask the Court not to submit the issue [just and fair] on the basis that there's no pleading to support it and that there is no evidence to support it.

Mrs. Holliman undertook to prove wage rate pursuant to subsection 2. She, of course, requested a special issue submit-

---

1. Texas Rev.Civ.Stat.Ann. art. 8309 § 1 provides in part:

"Average weekly wages" shall mean:

(1) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, for at least two hundred ten (210) days of the year immediately preceding the injury, his average weekly wage shall consist of three hundred (300) times the average daily wage or salary which he shall have earned during the days that he actually worked in such year, divided by fifty-two (52).

(2) If the injured employee shall not have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, for at least two hundred ten (210) days of the year immediately preceding the injury, his average weekly

wage shall consist of three hundred (300) times the average daily wage or salary which an employee of the same class, working at least two hundred ten (210) days of such immediately preceding year, in the same or in a similar employment, in the same or a neighboring place, shall have earned during the days that he actually worked in such year, divided by fifty-two (52).

(3) When by reason of the shortness of the time of the employment of the employee, or other employee engaged in the same class of work in the manner and for the length of time specified in the above Subsections 1 and 2, or other good and sufficient reasons, it is impracticable to compute the average weekly wages as above defined, it shall be computed by the Board in any manner which may seem just and fair to both parties, as of the date of injury.

ting the subsection 2 method of wage rate computation. In response, the district court submitted special issues "six" and "seven":

SPECIAL ISSUE NO. 6.

Do you find from a preponderance of the evidence that another employee of the same class as Martha Holliman worked at least 210 days of the year immediately preceding November 21, 1978, in the same or similar employment and in the same or a neighboring place?

Answer "We do" or "We do not."

ANSWER: We do not

If you have answered Special Issue No. 6 "We do," then answer Special Issue No. 7; otherwise do not answer Special Issue No. 7.

SPECIAL ISSUE NO. 7.

Find from a preponderance of the evidence the average daily wage which such other employee earned during the days he or she actually worked in such year.

Answer in dollars and cents.

ANSWER: ——————————

As is obvious by the jury's answer to special issue six, Mrs. Holliman failed to discharge her burden to persuade the jury that there was another employee of the same class who had worked at least two hundred and ten days in similar employment in the same or neighboring place. In point of error one, Mrs. Holliman attacks the refusal of the jury to so find as being "against the great weight and preponderance of the evidence."

In reviewing factual sufficiency points of error, the appellate court considers all of the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

For another worker to be of the "same class" as the injured or deceased worker, it is not necessary that every detail of their daily tasks be identical, but only that the work be similar in nature. *Pan American Ins. Co. v. Stokes*, 370 S.W.2d 955 (Tex.Civ. App.1963, no writ); *Travelers Ins. Co. v.*

*Woodall*, 356 S.W.2d 344 (Tex.Civ.App. 1962, writ ref'd n.r.e.); *Texas Employers' Insurance Association v. Butler*, 287 S.W.2d 198 (Tex.Civ.App.1956, writ ref'd n.r.e.); *Texas Employers' Insurance Association v. Robison*, 241 S.W.2d 339 (Tex. Civ.App.1951, writ ref'd n.r.e.).

In an effort to discharge her burden to prove that there was another employee of the same class as she who worked two hundred and ten days of the year immediately preceding the date of her injury in the same or similar employment and in the same or a neighboring place, Mrs. Holliman called Kenneth Odiorne.

Odiorne, a wholesale meat salesman at trial time, had previously been the cafeteria manager at St. Edwards University in Austin. He had worked sixteen or seventeen years as cafeteria manager at Wyatts Cafeteria, Jester Dormitory at the University of Texas, Texas Instruments, and at St. Edwards University.

Counsel for Mrs. Holliman, through Odiorne, sought to prove the similarities between the tasks and responsibilities of the cafeteria manager at St. Edwards University and the cafeteria manager at the Leander school district. On the other hand, counsel for the school district undertook on cross-examination to demonstrate the differences between the two jobs. Odiorne opined, based upon an examination of Mrs. Holliman's job description, that such job description characterized the position of cafeteria manager with the possible exception that under her job description, Mrs. Holliman could not hire and fire personnel. He concluded further that her job description was a very standard one and that he performed at St. Edwards the same tasks as those in her job description except that his job was more comprehensive.

Odiorne was supervised by the Dean of Students, while Mrs. Holliman worked under the direction of the Food Service Director. The Food Service Director of the school district, Mrs. Naida Weed, also filled in when other employees were absent and spent some time in the kitchen with Mrs. Holliman. Odiorne's title was Food Service

Director and, at times, Food Service Manager. As of late he had been called "Director." Mrs. Holliman was supervised by the Food Service Director, Mrs. Weed. The need for a Food Service Director in the school district was explained by the existence of several units in need of supervision and coordination.

Odiorne performed at St. Edwards University many of the tasks reserved for Mrs. Weed, the Food Service Director at the school district. For example, Odiorne planned menus, he hired and fired personnel, and he was authorized to call for outside repair of equipment if necessary. Mrs. Weed, the Food Service Director at the school district, and not Mrs. Holliman, planned menus; hired and fired personnel, after consulting with Mrs. Holliman; and called outside for repair of equipment.

As previously written, Odiorne had worked sixteen or seventeen years as a cafeteria manager whereas Mrs. Holliman had worked only about one year as manager of a school cafeteria. Mrs. Holliman's prior experience in food service had been as a waitress and as an employee at a movie concession stand. The administration at St. Edwards preferred a Food Service Director with a bachelor's degree, although a minimum of five years experience in food service would suffice. The school district required no educational prerequisites and no managerial experience—only experience in food service. Although Odiorne held no bachelor's degree, he had earned one hundred and seventy-two hours of college credit. He had attended professional seminars and workshops in food service, and he was a member of the National Association of College and University Food Services and the Texas Restaurant Association. Mrs. Holliman, to the contrary, did not finish the ninth grade, and she had not taken any other educational courses. She had attended workshops concerning cleanliness. Cooks and other kitchen help were invited to such workshops. Finally, Mrs. Holliman did not belong to any professional food service associations.

Both Odiorne and Mrs. Holliman supervised maintenance of food preparation and service standards; ordered, received and stored food and supplies; kept an inventory of foodstuffs; kept weekly or daily records; and enforced the rules and regulations of the food service department. Both Odiorne and Mrs. Holliman trained subordinates, although Odiorne had many more full-time and part-time employees than did Mrs. Holliman.

Odiorne scheduled employees' hours, while Mrs. Holliman did not. He selected the recipes for the food served; Mrs. Holliman did not. Odiorne was responsible for the service of three meals each day for seven days a week whereas Mrs. Holliman served breakfast and lunch five days each week. Odiorne was provided an assistant manager and a student supervisor. Mrs. Holliman had an assistant, also, but the assistant was another employee who performed her usual tasks unless Mrs. Holliman was absent.

From a review of all of the evidence, *In re King's Estate, supra,* it is fair to conclude that while there are many similarities between Odiorne's and Mrs. Holliman's employment, there are more than a few differences. From all of the evidence, the jury could well have concluded there was another employee of the same class as Mrs. Holliman engaged in the same or similar employment in the same or neighboring place. On the other hand, the jury under these facts could have reasonably concluded that the two employments were not similar. Under such facts, it is basic to our system of jurisprudence that a reviewing court may not substitute its view of the facts for that of the fact-finder. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951); *Alley v. Booth,* 16 Tex. 94, 95 (1856). This Court should overrule point of error one.

As basis for reversal of the judgment the majority advances the following postulate:

> In a situation as here where the jury failed to find that there was another employee of the same class as appellant who worked at least 210 days in the

preceding year in the same or similar employment and in the same or neighboring place, it then becomes the duty of the trial court to compute the average weekly wages in a manner which may seem "just and fair" to both parties under subsection 3 of Sec. 1 of this article. *Texas Employers' Insurance Assn. v. Wade,* 288 S.W.2d 284 (Tex.Civ.App.1956, writ ref'd n.r.e.).

The most cursory reading of *Wade* demonstrates that it is no authority at all for the asserted proposition. In *Wade* the case was tried *to the court,* not to a jury as in the case at bar. Certainly, in a bench tried case, if the injured employee establishes that his wages cannot be computed pursuant to subsections 1 or 2, then based upon the evidence, the trial court, as the fact finder, computes wage rate pursuant to subsection 3, "just and fair." In the case at bar, the case was submitted *to the jury* as fact-finder for determination of wage rate. Mrs. Holliman expressly waived submission of wage rate pursuant to subsection 3, and she failed to obtain a finding enabling the court to compute wage rate pursuant to subsection 2.

In a case tried to a jury, the trial court, of course, does not make findings of fact except for omitted issues in support of the judgment. Tex.R.Civ.P.Ann. 279 (1977). No contention is made that the subsection 3 issues are "omitted issues" in face of Mrs. Holliman's express waiver of their submission.

Under the facts of this case, the trial court would have been without authority to proceed to find the "just and fair" wage rate pursuant to subsection 3 as suggested by the majority. Moreover, Mrs. Holliman does not even contend that the trial court should have made such findings.

█ In response to other points of error, the majority has held that the answer of the jury that the duration of Mrs. Holliman's partial incapacity was permanent is in conflict with the jury's answer refusing to find that another employee of the same class as Mrs. Holliman worked two hundred and ten days in the preceding year in the same or similar employment and in the same or a neighboring place. The claimed authority of Mrs. Holliman for this holding is *Employers Reinsurance Corp. v. Holland,* 162 Tex. 394, 347 S.W.2d 605 (1961), although the majority does not assert any authority in support of its holding.

*Holland* stands for no such proposition. *Holland* was an original proceeding in mandamus filed in the Supreme Court. Petitioner sought a writ of mandamus directing a district judge to set aside a mistrial declared in a workers' compensation case pending in Harris County. In the workers' compensation suit the parties had *stipulated* the average weekly wage of the injured employee before and at the time of his injury to be $100.00. The jury answered in response to special issue 2 that the injury was a producing cause of partial incapacity in the employee. The jury answered further in response to special issue 6 that the average weekly wage earning capacity during the existence of his partial incapacity was $100.00 (the exact sum as his average weekly wage before and at the time of his injury, as stipulated by the parties).

The Supreme Court concluded in *Holland* that the answer of the jury to special issue 6, considered along with the stipulation of the parties, was in fatal conflict with its answer to special issue 2, and that the order of mistrial was therefore proper.

In the case under consideration, the jury answered that Mrs. Holliman's injury was a producing cause of permanent partial incapacity. It answered further that Mrs. Holliman's average weekly earning capacity during her partial incapacity was $164.80. However, the jury by their answer to special issue 6 *refused to find* that there existed another employee in the same class as Mrs. Holliman who had worked two hundred and ten days of the preceding year. Special issue 7 was conditioned upon an affirmative answer to special issue 6. Because the jury did not answer special issue 6 affirmatively, it did not answer 7. Therefore, in this case, unlike *Holland,* there is a "non-finding" by the jury as to a

critical wage rate inquiry pursuant to art. 8309 § 1.

Where is the conflict? Mrs. Holliman's average weekly earning capacity during the partial incapacity was $164.80. Because the jury failed to find there was another employee in the same class as Mrs. Holliman who had worked two hundred and ten days preceding the date of injury, it did not answer special issue 7 and find the average daily wage of that non-existent employee. This Court does not know, nor does anyone else know, what sum the jury would have assigned as an average weekly wage in response to special issue 7. Hence, there is no jury finding which could be in conflict with its finding of average weekly earning during Mrs. Holliman's partial incapacity.

It is plain that there is no conflict in the jury's answers and there is no need even to refer to those authorities which set out the applicable procedures for the resolution of an actual conflict. *Little Rock Furniture Mfg. Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985, 991 (1949); *Pearson v. Doherty*, 143 Tex. 64, 183 S.W.2d 453, 456 (Tex.1944).

In reply to the concurring opinion, the settled rule is that the burden is on the worker to obtain an affirmative finding eliminating the applicability of subsection 2 before he may have the jury determine a "just and fair" wage rate pursuant to subsection 3. *Texas Employers' Insurance Association v. Ford, supra.* For reasons of her own, Mrs. Holliman did not even request a submission to eliminate the applicability of subsection 2 and a submission to establish a "just and fair" wage rate. In fact, she expressly waived the submission of issues pursuant to subsection 3. As a result, surely she is not entitled to a reversal of the judgment and a new trial.

The judgment should be affirmed.

POWERS, Justice, concurring.

I concur in Justice Shannon's opinion that: (1) the jury's answers are not in conflict; and (2) the jury's finding "we do not," in answer to special issue six, is not so against the great weight and preponderance of the evidence as to be manifestly unjust. I respectfully do *not* agree, however, that we must therefore affirm the trial-court judgment that Mrs. Holliman take nothing by her suit notwithstanding the jury's finding that she had been injured in the course of her employment. In my view, we may only reverse the judgment below and remand for a new trial, the result also reached by Justice Brady. Before stating the reasons for my view, and owing to the general importance of the issues, I respectfully invite the Supreme Court of Texas to clarify the points upon which Justice Shannon and I diverge, there being no clear holding by that Court to control the issues.

## THE STATUTORY TERM "AVERAGE WEEKLY WAGES"

In the trial de novo authorized by Tex. Rev.Civ.Stat.Ann. art. 8307, § 5 (Supp. 1984), the rights and liability of the parties are specifically required to be determined by the provisions of the Workers' Compensation Act, Tex.Rev.Civ.Stat.Ann. arts. 8306–8309b (1967 & Supp.1984). That is to say, in administering the act a district court is required to apply its provisions as does the Industrial Accident Board for whom the provisions are basically intended. *Texas Employers' Ins. Ass'n. v. Ford*, 153 Tex. 470, 271 S.W.2d 397, 399 (1954). Under the act, it is provided that an employee injured "in the course of his employment" shall have no cause of action against a subscribing employer but instead *shall have compensation* solely under the act. Art. 8306, §§ 3, 3b. The amount of compensation awardable for the injuries sustained by Mrs. Holliman is based upon her "average weekly wages." Art. 8306, §§ 6, 10, 11.

Three definitions of "average weekly wages" are supplied in art. 8309, § 1 of the act. In legal effect, each definition is an arbitrary standard intended to secure consistency in the amounts awarded to employees. Each definition establishes the base from which an award is calculated in a case in which one of the three mutually

exclusive standards is established. The three standards are:

1. *The claimant's own wages.* The claimant's personal or actual wages are used to calculate his "average weekly wage" if he has worked as much as 210 days for his employer immediately before his injury.

2. *The wages of another employee.* Where the claimant has *not* worked as much as 210 days for his employer immediately before the injury, the claimant's "average weekly wage" is assumed to be

the average daily wage or salary which an employee of the same class, working at least [210 days of the year immediately before the claimant's injury], in the same or in a similar employment, in the same or a neighboring place, shall have earned during the days that he actually worked in such year....

3. *A "just and fair" wage.* Where neither of the foregoing is applicable to the claimant's case, the Board is directed to compute the claimant's "average weekly wages" "in any manner which may seem just and fair to both parties, as of the date of the injury."

### FIXING THE "AVERAGE WEEKLY WAGE" IN A JURY TRIAL

It has been said that the fixing of a particular standard, from among the three, is "a fact issue for the trial court to determine" when trial is had without a jury. *Maryland Casualty Co. v. Brown,* 95 S.W.2d 537, 538 (Tex.Civ.App.1936, writ ref'd). I think it obvious that the issue is a fact issue for the jury when trial is conducted with the aid of a jury, providing the parties disagree about which is the proper standard and one is not otherwise established as a matter of law.

It is well-established that "[t]he burden under the statute is upon the plaintiff to establish his wage rate." *Texas Employers' Ins. Ass'n. v. Shannon,* 462 S.W.2d 559, 562 (Tex.1970). Another well-established rule applicable to the plaintiff's attempt to establish his wage rate is this: the claimant is not permitted resort to the sec-

ond standard until the first standard is "eliminated" from the case; and he is not permitted resort to the third standard until the first and second standards are "eliminated" from the case. *Aetna Ins. Co. v. Giddens,* 476 S.W.2d 664 (Tex.1972); *Texas Employer's Ins. Ass'n. v. Ford, supra.* What does the word "eliminate" mean in this context? It means, in my reading of the pertinent decisions, that a standard must be submitted *negatively* to the jury and answered by them "we do." For example, where the parties stipulate that the first standard is not applicable to the case, before the second standard is "eliminated" from the case the jury must answer "we do" in response to a negative issue framed along the following lines:

Do you find from a preponderance of the evidence that *there was not* an employee of the same class as plaintiff who worked at least 210 days of the year immediately preceding (the date of the injury) in the same or similar employment in the same or a neighboring place?

2 Texas Pattern Jury Charges, § 23.04 (1970) (emphasis added). See also § 23.02 relative to a negative submission of the first standard. *See e.g. Texas Employers' Ins. Ass'n. v. Ford, supra,* ("the jury found that no employee of the same class as respondent had worked in the same or similar employment in the same or a neighboring place for substantially the whole of the year immediately preceding the date of respondent's injury."); *Aetna Ins. Co. v. Giddens, supra,* ("He then failed to prove that no other employee worked for the 210 days."); *Robinson v. Texas Employers' Ins. Ass'n.,* 261 S.W.2d 217 (Tex.Civ.App. 1953, writ ref'd) ("In answer to Special Issue No. 15 the jury found that no other employee of the same class as plaintiff had worked substantially the whole of the year immediately preceding plaintiff's injury in the same or similar employment and in the same or neighboring place ...."). A variant is found in *Superior Ins. Co. v. Griffin,* 323 S.W.2d 607 (Tex.Civ.App.1959, aff'd, 161 Tex. 195, 338 S.W.2d 415 (1960)) where the jury answered "another employ-

ee had not worked," a finding the Supreme Court of Texas characterized as tantamount to a finding "that there was no other worker of the same class who had done similar work in the same or neighboring place." One cannot definitely ascertain the form of the submission in *Texas Employers' Ins. Ass'n. v. Shannon, supra,* although it was evidently a negative submission because the succeeding special issue inquired: "[I]f there was not another employee of the same class ... what amount of money, if any, would be just and fair to be fixed as the average weekly wage of the plaintiff." *Texas Employers' Ins. Ass'n. v. Shannon,* 453 S.W.2d 217, 218 (Tex.Civ.App.1970).

## HOLDING AND DISCUSSION

It should be obvious from the foregoing that the framing of the issue in a negative form is designed to place the burden of proof upon the plaintiff to eliminate the second standard, in order that he might establish his average weekly wage under the third standard, in cases where the plaintiff *assumed* the burden of eliminating the second standard from the case. But the point to be made here, upon which I differ with Justice Shannon, is this: unless the jury answer "we do" to a *negative* submission relative to the second standard, it is *not* "eliminated" from the case. If, as in the present case, the jury answer "we do not" to an *affirmative* submission relative to the second standard, it is not *eliminated* from the case; rather, it simply is not *established* in the case. Here, the jury did just that, answering "we do not" to special issue six which inquired:

> Do you find from a preponderance of the evidence that another employee of the same class as Martha Holliman worked at least 210 days of the year immediately preceding November 21, 1978 in the same or similar employment and in the same or a neighboring place?

The jury's answer, "we do not," *does not eliminate* the second standard from the case because it constitutes only a *failure to find* the elements necessary to *establish* that standard.

In truth, the parties in the present case, by their stipulation that Mrs. Holliman did not work the number of days required by the first standard and, by having failed to provide for an issue that eliminates the second standard, simply foreclosed themselves from calculating Mrs. Holliman's average weekly wage on any of the three standards. The second standard has not been *established* in the case, by reason of the jury's answer to special issue six; and it has not been *eliminated* from the case because the jury have not found that no other employee of the same class as plaintiff had worked substantially the whole of the year preceding the injury in the same or similar employment and in the same or a neighboring place, nor has that proposition been established as a matter of law. I therefore believe the present case falls squarely within the rule of *Ford.* There, the Supreme Court held there was no evidence to support the jury's finding that would have eliminated the second standard. The Court said:

> The evidence in this case clearly does not eliminate Subsection 2. *The case should therefore be retried.*

271 S.W.2d at 400 (emphasis added).

But a retrial may be ordered in the present case only if Mrs. Holliman did not have the burden of eliminating the second standard, for she may be viewed as having waived any resort to the third or "just and fair" standard. I believe she did not have that burden given her theory of the case, nor was she required as a matter of law to assume that burden or risk a take-nothing judgment.

Apparently, only two reported appellate decisions have considered directly the issue of which party has the burden of eliminating the second standard in a case where the plaintiff rejects that burden and chooses to rely solely upon the second standard. One decision is *Truck Insurance Exchange v. Cartmill,* 385 S.W.2d 277, 280 (Tex.Civ. App.1964, no writ). Without discussion, the court merely stated that the *defendant* must assume the burden of eliminating the

second standard, by a negative submission thereof, if *he* wishes to *force* the plaintiff to the third or "just and fair" standard. For authority, the court cited the *Ford* decision where, of course, the *plaintiff assumed* the burden of eliminating the second standard, by a negative submission, in order to establish the third.

The second decision is *Texas Employers' Ins. Ass'n. v. McMahon*, 509 S.W.2d 665 (Tex.Civ.App.1974, writ ref'd n.r.e.). It is more enlightening. The majority and the dissent there disagreed on whether the evidence was sufficient to support the jury's finding on an *affirmative* submission of the second standard, upon which standard alone the plaintiff assumed the burden. Two of the justices concurred that the evidence *was* sufficient to support the finding. They therefore affirmed the trial court judgment for the plaintiff. Because they did so, they did not reach the defendant's secondary argument that a new trial was improper because:

1. the "plaintiff had the burden of negativing the applicability of subdivision 2 before going to subdivision 3"; and

2. the plaintiff "did not assume such burden, and did not submit or request a submission thereof."

Justice Keith found the evidence *in*sufficient to support the jury's finding on the second standard. He was therefore logically required to address the defendant's secondary argument that a new trial should not be ordered. He rejected the defendant's argument "since it is apparent that the evidence on the question was not fully developed and the case was tried on the wrong theory." 509 S.W.2d at 670. He cited as authority *Aetna Ins. Co. v. Giddens, supra,* a case involving the negative submission of the second standard by a plaintiff who assumed the burden of eliminating it from the case in order to reach the third standard. And, by reference to the comment and caveat in 2 Texas Pattern Jury Charges, § 23.04, *supra,* Justice Keith suggested unmistakably that the *defendant,* if he wished to avoid a new trial on remand, must assume the burden of negativing the second standard where the plaintiff does not assume that burden but instead seeks recovery solely upon the second standard. And because the state of the verdict, under his view of the evidence, would not allow a method for calculating recovery on any of the three standards, Justice Keith concluded that "the case was tried on the wrong theory."

In summary then, Justice Keith explicitly *rejected* the defendant's theory that the plaintiff, under the general rule that he has the burden of establishing his average weekly wage, must assume the burden of negativing the second standard even though he may simultaneously seek to establish it on the theory that it alone applies to his case. This is the precise argument made by the defendant in the present case. I would reject it for the reason given by Justice Keith, but also for the more fundamental reasons which follow.

The decision where to place the burden of persuasion, and therefore the burden of eliminating the second standard, should be governed by considerations of convenience, fairness, and policy, including the factor of practicality. 1 Ray, Texas Practice, Law of Evidence, § 43, p. 53 (1980); Hodges, Special Issue Submission in Texas, § V, p. 84 (1959). To place upon a workers' compensation claimant a burden simultaneously to establish *and* eliminate the second standard raises an unfairness and practical problems obviously not intended by the act.

The claimant, as here, may believe himself entitled to compensation measured by the second standard. Accordingly, he so pleads his case and adduces evidence to "establish" the second standard, which requires an *affirmative* submission of the elements of that standard. In cases where the jury are persuaded as to the second standard, and answer the submission "we do," there is no difficulty and the claimant's compensation is calculated from the second standard and judgment rendered for the resulting sum. On the other hand, if the jury are not persuaded as to the second standard, there is no means of calculating an award based upon the third

standard unless the jury first answer "we do" in response to a *negative* submission of the elements of the second standard, thereby eliminating it from the case.

May we not simply require the claimant to plead and show *alternatively*, as part of his general obligation to establish a wage rate, that the third standard is applicable to his case if the second is not? Alternative claims and defenses are, of course, quite familiar in our Texas practice. Tex.R. Civ.P. 48 (1979). For example, a plaintiff may recover on a claim in quantum meruit if the jury are not persuaded by his allegation and proof of a contract between himself and the defendant. But we do not require that the plaintiff, in such cases, both establish and eliminate his contract claim before he may recover in quantum meruit as he has pleaded alternatively. Rather, the plaintiff may recover in quantum meruit if the jury merely *fail to find* the existence of a contract between plaintiff and defendant. That is to say, the plaintiff may recover in quantum meruit even if he fails to "establish" such a contract—we do not impose upon him a burden to "eliminate" the existence of such a contract before allowing him to recover in quantum meruit.

Thus, if the principle of alternative pleading be incorporated in the statutory cause of action allowed by the workers' compensation act, it is readily apparent that some adjustment must be made relative to the well-established rule that a claimant may recover under the third standard only after the first two have been "eliminated" from the case. Under that rule, as shown above, the jury must answer "we do" a *negative* submission of the second standard, before resort may be had to the third standard, for that is the only finding that will "eliminate" the second standard. In the statutory cause of action allowed by the act, it has not previously been sufficient, for recovery under the third standard, that the jury answer "we do not" an *affirmative* submission of the elements of the second standard.

There is, moreover, a fundamental unfairness in placing upon the claimant the concurrent burdens both of establishing and eliminating the second standard, by alternative pleading and proof, before he may obtain recovery according to the third standard. If he be assigned such concurrent burdens, he must perforce offer contradictory evidence: that there *is*, and there *is not*, an employee of the same class who worked the requisite period of time in the same or similar employment, in the same or a neighboring place. Both propositions cannot be true, of course, and there is, naturally, a quite obvious element of incredibility that extends to all of the claimant's evidence and argument, whatever it tends to show. More importantly, however, the claimant is faced with the distinct *probability* that the jury, owing to the contradictory evidence offered by the plaintiff himself, may *remain unpersuaded as to either special issue*, the first establishing the second standard and the next eliminating it. The result will be that the second standard is neither established *nor* eliminated and the claimant can *never* reach the third standard. There is, of course, no "conflict" in such answers—the jury simply were not persuaded as to either standard by the inherently contradictory evidence offered by one party. The threat pervading these circumstances presses inevitably and unfairly down toward the third standard as the only one the claimant has a fair prospect of establishing in a jury trial, contrary to the very statutory provision for alternative standards tailored to fit different circumstances.

On the other hand, if the *defendant* be given the burden of eliminating the second standard, and the resulting burden of submitting a negative form of the second standard, in cases where the claimant proceeds on a theory that only the second standard is applicable to his case, the act is allowed to work as it was intended. Moreover, we avoid repeated trials of the same claim while nevertheless permitting the claimant to proceed on his theory of the case and a fair opportunity of proving it.

I find no case which places upon the plaintiff the burden simultaneously to establish and eliminate the second standard when he relies upon it alone to establish his average weekly wage. The only judicial discussion of the issue suggests placing the burden on the defendant to eliminate the second standard in those cases where the defendant wishes to force the plaintiff to the third standard in order to avoid remand and a new trial. Fairness, convenience, and policy suggest that it is proper to require the defendant to assume the burden in such cases. I would therefore hold that the defendant must assume and discharge that burden in cases where the plaintiff chooses to plead and prove that only the second standard is applicable to his case; and, that we must remand the present case for a new trial because the second standard has not been eliminated from the case. And because Mrs. Holliman did not, in my view, have the burden of eliminating the second standard, she could not have "waived" a right to recover on the third standard by failing to submit special issues eliminating the second standard and establishing the third.

With these observations, I concur in the judgment reversing the judgment of the trial court and remanding for a new trial.